AMEY T. GORHAM *vs.* FRANK A. SAYLES *et al.*

PROVIDENCE—DECEMBER 28, 1901.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Equity. Executors and Administrators. Constructive Notice.*

In 1872 A. and B. acquired a factory estate, under a deed to them as co-partners, from S. At that time A. signed a paper in the name of the firm to the effect that the bell on the factory was not included in the sale of the estate, and agreeing to give up the same to G., his order or assigns, at any time after one year from date. A. deceased in 1894, the firm being thereby dissolved, leaving a will of which his son, the defendant, was executor. In July, 1896, B., the surviving partner, sold all his interest in said factory estate to the defendant. In August, 1899, the complainant, the sole devisee, legatee, and executrix of G., filed her bill to compel the defendant to deliver to her the bell. The defendant denied all knowledge of the agreement between the firm and G.:—

*Held*, that in the purchase of the factory the defendant was acting individually and not as executor, and was not chargeable with constructive notice of a fact concerning which there was neither information nor papers to show him the true state of affairs.

29

(2) *Partnership.  Notice.  Executors and Administrators.*

*Held*, further, that, the estate being partnership property, the transaction between the defendant and the surviving partner was distinct from any relation or duty or implication of notice which would attach to him in a transaction in which he acted in his capacity as executor.

(3) *Equity.  Laches.*

*Held*, further, that as the delay of the complainant in enforcing her rights had operated to the prejudice of the defendant, an innocent purchaser for value, she was estopped on the ground of laches from prosecuting her claim.

BILL IN EQUITY seeking relief set forth in the opinion. Heard on bill, answers, and proof.    Bill dismissed.

STINESS, C. J.   The complainant brings this suit to compel the respondent Frank A. Sayles to deliver to her a bell in his possession used on the Butterfly factory for many years, "of great antiquity and of great value as a curious and, in this locality, unique specimen of ancient work."   The bell was on the factory in 1872, when W. F. and F. C. Sayles became owners of the estate under a deed to them, as copartners, from H. M. Sawtelle.   At that time Wm. F. Sayles, the father of the respondent Frank A. Sayles, signed a written paper in the name of the firm as follows :

"Know all men by these presents, that the old bell on the Butterfly Factory, so-called, in the town of Lincoln, an estate bought by us of H. M. Sawtelle as described in deed, dated May 16, 1872, was not included in the sale of said estate, and we agree to give up the same to John Gorham, his order or assigns, at any time it may be called for after one year from this date.

"W. F. & F. C. SAYLES."

The complainant is the sole devisee and legatee and sole executrix under the will of John Gorham, and as such claims title to the bell.

The firm of W. F. & F. C. Sayles was dissolved in 1894 by the death of Wm. F. Sayles, who left a will of which Frank A. Sayles is executor.   In July, 1896, Frederic C. Sayles

sold and conveyed to Frank A. Sayles all his interest in said factory estate. The bell was then on the factory, and Frank A. Sayles testifies that when he purchased said interest he assumed that the bell went with the factory, and that he never heard of the agreement above referred to, nor of any other claim that it did not belong to him, until a short time before the filing of this bill in August, 1899.

(1)    Upon these facts several questions have been raised which, in our view of the case, need not be considered, the point chiefly relied on in defence being that of laches on the part of the complainant and her husband, from whom she claims title.

The instrument under which the complainant claims was executed twenty-two years before Frank A. Sayles bought the property, and during all those years the firm of W. F. & F. C. Sayles was in possession and apparent ownership of the bell. Not disputing this, the complainant argues that Frank A. Sayles is charged with knowledge of his father's and the firm's lack of title, because he is the executor of his father's will. Without doubt, if he were simply standing upon his father's title, he could claim no more than his father could have claimed. He would simply administer his father's estate, and would be bound by its limitations. But it is quite another thing to say that in his personal dealings he is bound to the same extent. The executor had no notice of the paper in question from any of the papers which came to him in the course of his duties, nor would he have been likely to have it. The paper was a disclaimer of title by the firm and not by the individual who signed it for the firm. If a copy was retained it would be likely to be with the firm's papers, which would be in the custody of the surviving partner. Giving the doctrine of constructive notice its fullest application, it could only impute to the executor knowledge of things that should come to him as such; and this would not include knowledge of every transaction of the firm for the preceding twenty-two years. His relation to the firm was to see that a proper account was rendered, and in performing that duty he certainly cannot be charged with neg-

ligence or a breach of duty in not knowing something that had happened so long ago. If ignorance of the agreement would not be a breach of duty on his part, how can notice of it, as a thing he ought to have known, be imputed to him in an independent transaction? In the purchase of the factory he was acting individually, and not as executor. His relation to the purchase was, therefore, like that in *Holland* v. *Citizens Bank*, 17 R. I. 87, where it was held that notice to a bank is not notice to one who is a director of the bank, but acting for himself individually. The court said : "We know that in point of fact a man may be a director in a bank and yet be ignorant of many matters that occur in its management; and we know of no rule that affects him constructively with notice when he is acting for himself individually, as said Lowe was when he purchased said estate, and not for the bank in his capacity as director." For a stronger reason we think that an executor is not chargeable with constructive notice when acting for himself, when the one whom he officially represents has died and can give him no information and leaves no papers to show his executor the true state of affairs.

(2)    We next come to the matter of the purchase of the factory. It was clearly copartnership property, because it was expressly conveyed to W. F. & F. C. Sayles as copartners. Chief Justice Ames said, in *Tillinghast* v. *Champlin*, 4 R. I. 173, 209 : "Holding, as we do, that this real estate was copartnership property, the legal title to the undivided half was held by the surviving partner, according to every authority on this subject, English and American, cited on either side, in trust for the payment of the debts of the firm and of any balance that might be due to the estate of the deceased copartner upon the settlement of the partnership accounts. For the purpose of executing this trust, though but half of the *legal* title was vested in him, the surviving partner had the right in equity to sell the whole beneficial interest in the estate ; and a court of equity would assist the purchaser by contract, to get in the legal title to the other half from the heirs at law of the deceased copartner, even though they

were infants." *Delmonico* v. *Guillaume*, 2 Sandf. Ch. 366, and cases cited ; *Dyer* v. *Clark*, 5 Met. 576 ; *Howard* v. *Priest, Id.* 585 ; *Burnside* v. *Merrick*, 4 Met. 540 ; *Andrews* v. *Brown*, 21 Ala. 437 ; *McAlister* v. *Montgomery*, 3 Hayw. 94. The principle upon which the opinion was based is that, however land may be deeded, if it is copartnership property it is to be treated as such until the copartnership affairs are settled: So it was held in *Congdon* v. *Aylesworth*, Eq. 2, 491, October term, 1886, that the heirs of a deceased copartner were not necessary parties to an accounting for rents prior to the death of such partner. From the same principle it also follows that the title is practically one of joint tenancy, with a trust over as to the proceeds of sale upon an accounting. This being so, Frank A. Sayles bought the estate of the surviving partner, and the transaction was quite distinct from any relation or duty or implication of notice which would attach to him in a transaction in which he acted in his official capacity as executor.

(3)      We therefore come to the question of laches. It has been held in many cases that long and unexplained delay in asserting a right will bar a suit for its assertion. See Bouvier's Law Dict. tit. Laches, and cases cited. In some cases the delay has gone beyond the statutes of limitation of actions ; and in some cases they have been within that period, in connection with facts showing special damage resulting from the delay. Hence the rule was thus stated in *Chase* v. *Chase*, 20 R. I. 202 : "Laches in legal significance is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within the limits allowed by law ; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities and other causes, but when a court sees negligence on one side

and injury therefrom on the other, it is a ground for denial of relief." Under this doctrine of laches the case as to Frank A. Sayles seems to be plain.

As to the purchase of the property, he stands as an innocent purchaser for value. For many years the firm had the apparent ownership of the bell and the apparent right to dispose of it. The complainant and her predecessor in title knew their ownership of the bell, but took no steps to enforce their rights for twenty-seven years. Frank A. Sayles made his purchase in ignorance of any adverse claim of ownership, and if we were to order him to surrender the bell after six years and he were then to look to his vendor for re-imbursement, the latter could plead the statute of limitations to his claim. A complainant, whose delay has caused the trouble, with stronger reason should be barred both by limitation and laches. In *Hall* v. *Peckham*, 8 R. I. 370, goods had been obtained from the plaintiff by fraud by one who turned them over to his assignee, and the latter sold them. This assignee was removed and he turned over the proceeds to another assignee appointed in his place. The plaintiff sued the latter for the money in his hands from the sale within a year from the time when they had been fraudulently obtained. The court held that as the money was still in the defendant's hands, and there was no evidence that he had been in any way prejudiced by the plaintiff's delay in bringing the suit, the plaintiff was not estopped from prosecuting his claim. The qualification of prejudice from the plaintiff's delay is significant. It marks the line where one is estopped by his laches. In that case the prejudice did not appear; in this case it does appear. Consequently we must say that the complainant is not entitled to the relief she seeks.

Bill dismissed.

*Arnold Greene*, for complainant.
*Edwards & Angell*, for respondents.