Arthur H. LaPLANTE,

v.

**HONDA NORTH AMERICA, INC.**

No. 96–62–Appeal.

Supreme Court of Rhode Island.

July 8, 1997.

Mark Decof, Providence, Kevin B. Howard, for Plaintiff.

Gerald C. DeMaria, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

BOURCIER, Justice.

This matter is before the Court on a certified question from the United States District Court for the District of Rhode Island pursuant to Article I, Rule 6, of the Supreme Court Rules of Appellate Procedure.[1] The question comes to us from civil litigation currently pending in the Federal Court in which the plaintiff seeks to enforce the provisions of G.L.1956 § 9–1–50, alleging that the defendant has violated that statute by failing to make a settlement payment within thirty days of the date the release was sent by the plaintiff. The District Court found the statute to be unclear and has asked us to interpret its language by way of a certified question.

The certified question asks, "Does Rhode Island General Law § 9–1–50 provide for the recovery of compensatory interest based upon the unpaid settlement amount independent of a possible recovery of punitive damages for wilful or wanton conduct?"

### I

The facts, which are taken from the District Court's Order of Certification and the briefs of the parties, show that on March 11, 1989, the plaintiff, Arthur H. LaPlante (LaPlante), was seriously injured while operat-

---

1. Rule 6 of Article I of the Supreme Court Rules of Appellate Procedure provides:

"This court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or of the District of Columbia, or a United States District Court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court."

ing an all-terrain vehicle (ATV) designed, manufactured, and distributed by companies related to the defendant, Honda North America, Inc. (collectively Honda). LaPlante commenced a personal injury action against Honda in the United States District Court for the District of Rhode Island. A jury trial commenced in that court and resulted in a substantial verdict in favor of LaPlante upon which the trial judge entered final judgment. Honda timely appealed.

On appeal, the United States Court of Appeals for the First Circuit reversed the trial court's judgment on the ground that the trial judge had improperly instructed the jury on the law of product alteration and modification. *See LaPlante v. American Honda Motor Co.,* 27 F.3d 731, 737 (1st. Cir.1994). The Court of Appeals remanded the matter for a new trial.

Following the remand, the parties began negotiations that resulted in a settlement agreement. On January 19, 1995, LaPlante executed a release in return for Honda's promise to pay $600,000. The release was sent to Honda's corporate counsel in California that same day. However, according to counsel for Honda, due to some administrative confusion and oversight, payment was not made until thirty-four days after execution of the release.

On the day following receipt of payment, February 24, 1995, LaPlante filed a complaint in the Rhode Island Superior Court against Honda, alleging a violation of § 9–1–50, because of the fact that Honda had not made payment within thirty days of the sending of the release. LaPlante sought both punitive damages and interest calculated at 12 percent on the settlement award of $600,000 from the date of the accident, March 11, 1989.

The matter was removed to the United States District Court for the District of Rhode Island on the basis of diversity of citizenship. *See* 28 U.S.C. § 1446. The case was initially referred to United States Magistrate Judge Robert W. Lovegreen for "preliminary review, findings and recommended disposition."

LaPlante filed a motion for partial summary judgment, claiming that as a matter of law under § 9–1–50 he was entitled to interest on the settlement amount of $600,000 at the rate of 12 percent from the date of the accident. He did not move for summary judgment on the issue of punitive damages, apparently for the reason that there were relevant unresolved factual questions. Honda objected to LaPlante's motion for summary judgment and also filed its own motion for summary judgment, claiming that as a matter of law it was not liable for punitive damages. In support of its objection Honda offered affidavits from members of both branches of the General Assembly who sponsored the bill in 1991 that led to § 9–1–50.

On October 18, 1995, Magistrate Judge Lovegreen issued his report and recommendation. He concluded that the statute did not permit interest to be calculated upon the settlement amount but rather that it only permitted a cause of action for punitive damages with interest to be calculated thereon. He therefore recommended that LaPlante's motion for summary judgment be denied and also that Honda's motion for summary judgment be denied but without prejudice to permit LaPlante to conduct discovery into the issue of Honda's willful or wanton conduct.

Thereafter the issue came before United States District Court Judge Mary M. Lisi. On January 30, 1996, she prepared an order of certification for this Court.

## II

Section 9–1–50 provides that:

**"Settled claims not paid within thirty (30) days.—**

Whenever any claim is settled, the insurance company, adjusting company, or any other person, firm or corporation responsible for paying the settlement, shall make payment within thirty (30) days from the date the claimant or his or her attorney sends the release. Failure to make payment within thirty (30) days shall raise a presumption that failure to do so was a wilful and wanton disregard for the rights of the claimant. In addition to all other remedies, the payor shall be liable to the

claimant in a separate cause of action for punitive damages and interest which shall be computed at the rate of twelve percent (12%) per annum from the date the cause of action giving rise to the settlement occurred until the judgment on the claim brought pursuant to this section is entered.

"Any claim brought under the provisions of this section shall be given a priority on the trial calendar."

█ The certified question asks, in essence, whether this statute creates two causes of action, one for interest to be computed on the settlement amount as well as an action for punitive damages or solely a cause of action for punitive damages with interest computed thereon.

LaPlante suggests that in enacting this statute, the General Assembly intended to create two distinct causes of action as remedies against the threat of tardy settlement payment. He contends that the General Assembly intended (1) to permit recovery of interest on the settlement amount computed from the date of the underlying cause of action and, (2) to permit a cause of action for punitive damages.

LaPlante suggests that the statute has both a compensatory component as well as a punitive component. In his view the compensatory component is derived from a strict-liability award of interest computed upon the settlement amount from the date of the underlying cause of action. Under LaPlante's theory, because a tortfeasor's obligation to compensate a victim arises from the moment the victim is injured, including compensation for interest, and because a settlement represents the amount of a victim's claim liquidated to a sum certain, by allowing interest on the settlement amount, the General Assembly intended to compensate victims for the interest that they would have received had the case not settled. Additionally, according to LaPlante, the statute permits a victim to recover punitive damages when a defendant willfully and wantonly fails to make timely payment.

Honda contends that the General Assembly intended only to create a cause of action for punitive damages with interest to be computed on those punitive damages. In support of this view Honda points out that the statute never makes use of the phrase "settlement amount." Rather Honda suggests that the General Assembly realized that interest does not ordinarily attach to punitive damages and thus its intent was simply to modify the common law. Furthermore, Honda asserts that LaPlante's interpretation should be rejected because it would produce an extreme windfall that would be far out of proportion to the harm here suffered.

█ In considering the question posed, we agree with Magistrate Judge Lovegreen's assessment that § 9–1–50 "is not a model of statutory clarity" and that it is subject to two "completely different, although initially plausible interpretations of the statute." In a case such as this, where the statute is ambiguous, it is the task of this Court as the final arbiter on questions of statutory construction to interpret the meaning of the language employed. *Edward A. Sherman Publishing Co. v. Carpender,* 659 A.2d 1117, 1119 (R.I. 1995); *Fruit Growers Express Co. v. Norberg,* 471 A.2d 628, 630 (R.I.1984). Our task of interpretation is accomplished through the use of the rules of statutory construction. *Rhode Island State Police Lodge No. 25 v. State,* 485 A.2d 1245, 1247 (R.I.1984).

█ "In the event that a real or seeming ambiguity is perceived in reading the language of a statute, this court will attempt to ascertain the intention of the legislative body from a consideration of the entire statute, keeping in mind its nature, object, language and arrangement." *Algiere v. Fox,* 122 R.I. 55, 58, 404 A.2d 72, 74 (1979). Even in the face of ambiguity it is the text that is paramount. Furthermore, this Court will adopt a construction that avoids an absurd or unjust result. *Id.; see Chester v. aRusso,* 667 A.2d 519, 522 (R.I.1995); *Souza v. Erie Strayer Co.,* 557 A.2d 1226, 1228 (R.I.1989).

█ Although the parties have not asserted the issue to us through their briefs or during oral argument, we nevertheless find it appropriate to comment upon Honda's attempt to introduce before Magistrate Judge Lovegreen affidavits of legislators who sponsored the bill in 1991 that led to the instant

statute. We agree with Magistrate Judge Lovegreen that such post hoc affidavits offered as "recollections" of the intent of legislators are not true legislative histories and should be given no weight. They hold no place within the canons of statutory construction.

 Keeping in mind the above rules of statutory construction, we begin by looking at the language of the statute itself. As Honda contends, the statute never uses the phrase "settlement amount." Instead it only speaks in terms of punitive damages and interest. We believe it would be unlikely for the General Assembly to have intended to compute interest upon a settlement amount without ever making reference to that term and therefore conclude that the absence of that term is persuasive evidence that the Legislature meant to award interest only upon an award of punitive damages. A further examination of the language chosen by the General Assembly reveals that § 9–1–50 speaks of "a separate *cause* of action for punitive damages and interest", rather than "*causes* of action." Because we generally presume that the legislature "intended every word of a statute to have a useful purpose and to have some force and effect," *Defenders of Animals v. Dept. of Environmental Management*, 553 A.2d 541, 543 (R.I.1989), we believe that the Legislature's use of the singular is persuasive evidence of its intent to create a single claim for punitive damages with interest rather than two causes of action.

We believe too that the arrangement of the language of § 9–1–50 evidences an intent to award interest on punitive damages rather than on the underlying settlement award. This is so because of the proximity of the terms "punitive damages" and "interest." Their close positioning suggests that the word "interest" was meant to modify the phrase "punitive damages."

Finally, we are of the opinion that this interpretation of the statute must be reached in order to avoid an absurd or unjust result. In this litigation LaPlante's contended interpretation of the statute would in fact create a scheme of strict liability whereby a delay of a mere four days would subject Honda to approximately $576,000 in interest. We believe that contended interpretation is both extreme and unjust. The statute should not be so construed in the absence of clear and specific language by the Legislature.

For the foregoing reasons we conclude that § 9–1–50 should be construed to have created a single cause of action for punitive damages with interest to be computed thereon from the date of the underlying cause of action and that the statute does not contain an independent cause of action for interest to be computed upon the settlement amount. The certified question is answered in the negative, and the papers in this case are remanded to the United States District Court for the District of Rhode Island.

GOLDBERG, J., did not participate.