Edward A. RASO

v.

**Ashbel T. WALL, Jr., Director of the Department of Corrections et al.**

No. 2003–73–C.A.

Supreme Court of Rhode Island.

Aug. 23, 2005.

Richard K. Corley, for Plaintiff.

Christopher R. Bush, for Defendants.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

The applicant, Edward A. Raso, appeals from the Superior Court's denial of his application for postconviction relief, in which he sought to challenge the efficacy of the guilty plea that he had made on

September 19, 1973. The applicant's basic contention is that the trial justice who presided over his criminal trial in 1973 erred when, in the face of an oral motion to withdraw the guilty plea (which oral motion was made on the day of sentencing), she proceeded to sentence him.

This case came before the Supreme Court for oral argument on November 8, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that this case should be summarily decided. Without reaching at this time the merits of Raso's argument concerning the motion to withdraw the guilty plea, we remand the case for a finding of whether his application for postconviction relief was barred by the doctrine of laches.

### Facts and Travel

The applicant was originally indicted on four separate charges of rape, kidnapping, sodomy, and robbery. These charges stemmed from the kidnapping and rape of a teenaged girl on Providence's East Side on August 15, 1972.

On the third day of Raso's criminal trial (September 19, 1973), the state amended the indictment, retaining the charge of kidnapping, but reducing the other charges to the felony charge of being an accessory before the fact with respect to the other above-referenced crimes (*viz.*, rape, sodomy, and robbery). That same day, Raso pled guilty to the charges contained in the amended indictment. After conducting a hearing, the Superior Court accepted the guilty plea.

On November 28, 1973, Raso appeared before the Superior Court for sentencing. At that time, Raso's counsel informed the court that, earlier that morning, Raso had told him of his desire to withdraw his guilty plea. Raso's counsel stated that, because Raso had informed him of his wishes only moments before the start of the sentencing hearing, he had been unable to file a written motion.

Raso's counsel then made an oral motion to withdraw the guilty plea, and he asked that the court hear Raso so that his desire to withdraw his guilty plea would be reflected in the record. The court granted his request, and Raso was permitted to speak. He told the court that at the time that he pleaded guilty "[he] didn't get too much sleep and [he] didn't understand it." He also told the court that he desired "another chance to have a trial by a [j]ury."

After hearing these statements, the trial justice responded as follows:

"Mr. Raso, your attorney will file the necessary motion and you will have a hearing on the issue of whether or not you will be allowed to withdraw your plea and reinstate a plea of not guilty."

Raso's counsel then requested that the sentencing proceeding be continued. The Superior Court denied this request over the objection of Raso's counsel. The trial justice proceeded to sentence Raso to concurrent sentences of twenty years for kidnapping and thirty-five years on each of the three accessory counts.[1] There is no indication in the record that, after the

---

1. The sentences imposed by the Superior Court on November 28, 1973 were to run consecutively to a twelve-year sentence applicant was then serving for violating his probation with respect to an unrelated conviction. Two days later, on November 30, the Superior Court reduced to twenty years Raso's sentence on the charge of being an accessory before the fact of sodomy, since the court's initial sentence of thirty five years exceeded the statutory maximum.

sentencing proceedings on November 28, 1973, applicant's counsel ever actually filed a written motion to withdraw his guilty pleas.

Some twenty-eight years later, in September 2001, Raso filed an application for postconviction relief pursuant to the Rhode Island Post Conviction Relief Act, asking the court to vacate his guilty plea and reinstate his plea of not guilty. *See* G.L. 1956 §§ 10–9.1–1 through 10–9.1–9.[2] The applicant urged, in the alternative, that the court order specific performance of the sentencing recommendation that the prosecution had made back in 1973.[3] Counsel was appointed to represent him in connection with his application for postconviction relief.

In his application, Raso argued that the trial justice had abused her discretion when, on the day of sentencing in November of 1973, she opted not to allow him to withdraw his guilty plea and reinstate his plea of not guilty.[4] He further argued that the prosecutor's sentencing recommendation and certain statements that the court made to applicant had unfairly induced him to plead guilty.

On January 28, 2003, a hearing was held with respect to the application for postconviction relief, after which the Superior Court denied Raso's application, holding that there was no basis to find that the sentencing court had "acted improperly or that Raso did not know what he was doing when he entered the plea." The court chose not to reach the issue of whether the state's assertion of the doctrine of laches barred Raso's application.[5] The applicant filed a motion to reconsider, which the Superior Court summarily denied. The applicant then timely appealed, and coun-

---

2. General Laws 1956 § 10–9.1–1 provides:
 "(a) Any person who has been convicted of, or sentenced for, a crime, a violation of law, or a violation of probationary or deferred sentence status and who claims:
 (1) That the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of this state;
 (2) That the court was without jurisdiction to impose sentence;
 (3) That the sentence exceeds the maximum authorized by law, or is otherwise not in accordance with the sentence authorized by law;
 (4) That there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;
 (5) That his or her sentence has expired, his or her probation, parole, or conditional release unlawfully revoked, or he or she is otherwise unlawfully held in custody or other restraint; or
 (6) That the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding, or remedy;

 may institute, without paying a filing fee, a proceeding under this chapter to secure relief."

3. The sentences originally imposed by the Superior Court exceeded those recommended by the state. The Attorney General had recommended concurrent sentences of twenty-seven years for rape and twenty years each for kidnapping, sodomy, and robbery, all to be retroactive to November 11, 1972.

4. It should be remembered that the trial justice in 1973 did not definitively deny the motion to withdraw the plea, but simply declined to continue the scheduled sentencing proceeding.

5. In ruling upon the application for postconviction relief, the court made the following statement with respect to the laches issue: "There is considerable common sense and legal support for the State's argument regarding [laches] in the context of this case. I've adverted to the death and retirement of key figures in this scenario, and while I think the State could prevail on that, I don't have to reach that * * *."

sel was appointed to represent him on appeal.

On appeal, Raso again argues that the trial justice who presided over his criminal trial in 1973 erred when, in the face of his oral motion to withdraw his guilty plea (which oral motion was made on the day of sentencing, just before the sentencing proceeding), she proceeded to sentence him. The applicant argues that Rule 32(d) of the Superior Court Rules of Criminal Procedure requires that any motion to withdraw a guilty plea be heard prior to sentencing. In a closely related vein, Raso contends that the Superior Court erred in denying his request for a continuance prior to sentencing. The applicant also argues that he did not voluntarily, intelligently, and intentionally waive his right to a jury trial and that the Superior Court erred in denying his application for postconviction relief because it based its decision solely on the ground of laches.[6] For reasons that will shortly become clear, we need not reach any of these contentions at this time.

## Analysis

■ The state raised the affirmative defense of laches in this case,[7] although it was not the basis for the decision of the court below (*see* note 5, *supra*). After careful consideration, we now hold that that venerable defense of laches[8] may, in appropriate circumstances, be properly invoked by the state as an affirmative defense to an applicant's application for postconviction relief.

■ If the instant application is indeed barred by laches, then it will not be necessary for the Superior Court or this Court to decide at this time whether a Rule 32(d) motion to withdraw a plea must always be heard and passed upon before sentencing.[9] Accordingly, we are remanding this case to

---

**6.** The last contention is plainly erroneous—as the Superior Court's rescript opinion makes clear.

**7.** It is of little moment in this context whether we apply the conceptual label "laches" or "waiver" to the affirmative defense at issue here. Laches and waiver are first cousins—if indeed they are not siblings. *See, e.g., Lile v. State,* 671 N.E.2d 1190, 1194 (Ind.Ct.App. 1996) ("In a post-conviction proceeding, the State may raise the affirmative defense of laches, which acts as a legitimate waiver of the [applicant's] right to challenge a judgment.").

**8.** Although the concept of laches originated in the courts of chancery, it is today often employed in situations in which the relief sought is not readily classifiable as equitable in nature. *See, e.g., Latham v. State Department of Education,* 116 R.I. 245, 249–50, 355 A.2d 400, 403 (1976); *see also S.E.R., Jobs for Progress, Inc., v. United States,* 759 F.2d 1, 6–7 (Fed.Cir.1985); *Environmental Defense Fund, Inc. v. Alexander,* 614 F.2d 474, 478 (5th Cir.1980); *Smith v. State,* 565 N.E.2d 1114, 1115 (Ind.Ct.App.1991); *State v. Evans,* 273 Wis.2d 192, 682 N.W.2d 784, 800 (2004); *see generally Puleio v. Vose,* 830 F.2d 1197, 1203 (1st Cir.1987) ("The law ministers to the vigilant not to those who sleep upon perceptible rights. Like any litigant, a criminal defendant cannot routinely be rewarded for somnolence and lassitude.").

**9.** Rule 32(d) of the Superior Court Rules of Criminal Procedure provides in pertinent part that "[a] motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed * * *." In accordance with that rule, this Court has refused to consider an applicant's application for postconviction relief on the grounds that the "imposition of the sentence preceded the filing of that motion." *State v. Williams,* 122 R.I. 32, 36, 404 A.2d 814, 817 (1979).

Rule 32(d) does not explicitly indicate when a motion to withdraw a plea should be heard and decided. Whether the present applicant is entitled to postconviction relief due to the fact that sentencing occurred in this case even though an oral Rule 32(d) motion had been made in open court prior to the sentencing proceeding is an issue that need not be decided in this case if it is determined that the application for postconviction relief is barred by laches. (We would make the same observation with respect to applicant's allegation that he was unfairly induced to plead guilty.)

the Superior Court so that it may determine whether the instant application is barred by the doctrine of laches.

Although we have not previously had occasion to apply the doctrine of laches in the context of an application for postconviction relief, appellate courts in several other states have applied the doctrine of laches to this type of application. *See, e.g., Robbins v. People,* 107 P.3d 384, 388–91 (Colo.2005); *Wright v. State,* 711 So.2d 66, 67 (Fla.Dist.Ct.App.1998); *Walker v. State,* 769 N.E.2d 1162, 1167 (Ind.Ct.App.2002); *see also Whitehead v. State,* 352 S.C. 215, 574 S.E.2d 200, 202 (2002).[10]

 Section 10–9.1–3 provides that "An application [for postconviction relief] may be filed at any time." Although on its face, this language provides that there is no statutory limitation on the time in which an applicant may file an application for postconviction relief, the existence of such language does not preclude the application of the doctrine of laches. In our judgment, it would be absurd to read "at any time" as constituting a limitless "Open Sesame" in which an applicant could file an application for postconviction relief at literally *any* time without weight being given to the possible prejudice to the state wrought by the passage of time. Accordingly, we construe the statutory term as meaning at any *reasonable* time.[11] *See Robbins,* 107 P.3d at 389 ("[L]aches may be invoked against a stale claim where there is otherwise no time limitation to collateral attack"); *Lile v. State,* 671 N.E.2d 1190, 1194 (Ind.Ct.App.1996) ("While post-conviction relief is available at any time, the right to relief may be directly or impliedly waived.").

This Court has held that the defense of laches requires a showing of "negligence to assert a known right, seasonably coupled with prejudice to an adverse party." *Rodriques v. Santos,* 466 A.2d 306, 311 (R.I. 1983).

 In those jurisdictions that have permitted the invocation of the doctrine of laches to bar a long-delayed application for postconviction relief, it has been held that the state has the burden of proving by a preponderance of the evidence that the applicant unreasonably delayed in seeking relief *and* that the state is prejudiced by the delay.[12] *See, e.g., Wright,* 711 So.2d at 67 ("Laches is sustainable in a criminal case where there has been a lack of due

---

**10.** The state's brief has brought to our attention two decisions by the Superior Court to this effect. *Girard v. State,* 2000 WL 815867 (R.I.Super.2000); *Joost v. State,* 1999 WL 1318843 (R.I.Super.2000).

**11.** Although the "plain meaning" approach to statutory construction is generally both salutary and also respectful of the concept of tripartite government, said approach (like all approaches to statutory construction) is not without qualifiers. Chief among those qualifiers is the principle that the plain meaning approach is not to be adhered to when it would lead to an absurd result. As we stated very recently in the case of *State v. Santos,* 870 A.2d 1029 (R.I.2005): "[I]n abiding by the plain meaning rule, we remain mindful of the corollary principle that we 'will not construe a statute to reach an absurd result.' " *Id.* at 1032 n. 5 (quoting *Kaya v. Partington,*

681 A.2d 256, 261 (R.I.1996)); *see also LaPlante v. Honda North America, Inc.,* 697 A.2d 625, 628 (R.I.1997) ("[T]his Court will adopt a construction that avoids an absurd or unjust result."); *Berthiaume v. School Committee of Woonsocket,* 121 R.I. 243, 247, 397 A.2d 889, 892 (1979) ("[W]e adhere to the canon that statutes should not be construed to achieve meaningless or absurd results.").

We also note that this Court's adherence to the "avoid absurd results" canon of statutory interpretation is consistent with the traditional jurisprudential approach of American courts. *See, e.g., Church of the Holy Trinity v. United States,* 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892); *United States v. Kirby,* 7 Wall. 482, 74 U.S. 482, 19 L.Ed. 278 (1868).

**12.** Generally, a party asserting the affirmative defense of laches bears the burden of proof with respect to that defense. *See* Rule 8(c)

diligence on the part of the defendant in bringing forth the claim and prejudice to the State."); *Walker*, 769 N.E.2d at 1167 ("To succeed, the State must prove by a preponderance of the evidence that the [applicant] unreasonably delayed in seeking relief and that the State was prejudiced by the delay."); *see also Oliver v. United States*, 961 F.2d 1339, 1342 (7th Cir.1992) ("This doctrine [of laches] requires more than mere delay—the [applicant's] delay must be inexcusable as well as prejudicial to the government."). We adopt these criteria, which are consistent with the criteria that we have long used when laches has been asserted as an affirmative defense in civil cases. *See, e.g., Rodriques*, 466 A.2d at 311 (holding that the defense of laches requires a showing of "negligence to assert a known right, seasonably coupled with prejudice to an adverse party"); *see also Pukas v. Pukas*, 104 R.I. 542, 546, 247 A.2d 427, 429 (1968) ("[A]s is well settled, laches does not arise out of delay alone but out of delay which, unexplained, operates to the prejudice of the other party."); *Gorham v. Sayles*, 23 R.I. 449, 453, 50 A. 848, 850 (1901) ("'Laches in a legal significance is not mere delay, but delay that works a disadvantage to another.'").

■ Whether or not there has been unreasonable delay and whether prejudice to

the adverse party has been established are both questions of fact, and a determination must be made in light of the circumstances of the particular case.[13] *Lombardi v. Lombardi*, 90 R.I. 205, 209, 156 A.2d 911, 913 (1959) ("'What constitutes laches is to be determined in the light of the circumstances of that particular case.' * * * Ordinarily it is a question of fact and is addressed to the sound discretion of the chancellor."); *see also Pukas*, 104 R.I. at 547, 247 A.2d at 429; *Arcand v. Haley*, 95 R.I. 357, 364, 187 A.2d 142, 146 (1963).

In this case, the Superior Court has not made a finding as to whether or not the state can satisfy its burden of proving that Raso unreasonably delayed in seeking relief and as to the existence of prejudice to the prosecution.[14] *See Oliver*, 961 F.2d at 1342–43 (upholding district court's holding that laches barred applicant's postconviction motion based on the district court's finding of an unexcused delay of seventeen years and prejudice to the government); *Lile*, 671 N.E.2d at 1195–96. Therefore, we remand this case to the Superior Court for it to make the necessary factual findings and conclusions of law with respect to the laches issue.

### Conclusion

For the reasons stated herein, we remand this case to the Superior Court for

Superior Court Rules of Civil Procedure (listing laches as an affirmative defense); *see also DeCosta v. Viacom International, Inc.*, 758 F.Supp. 807, 815 (D.R.I.1991) ("Laches is an affirmative defense that must be proven by the party asserting it."), *rev'd on other grounds*, 981 F.2d 602 (1st Cir.1992).

13. We do not exclude the possibility of summary judgment being granted on the ground of laches in a particular case. We cannot determine at this juncture whether the case at bar is such a case.

14. At the January 28, 2003 hearing before the Superior Court, the state offered the following

argument in support of its position that laches should bar this action:

"[I]t is just at this point in time unduly prejudicial to the State to expect the State to go back and resurrect a case like this. People will not be available, recollections will be blurred. It might be virtually impossible at this point in time, 20 some years later to try Mr. Raso for the crimes of which he pled to."

There may well be much merit in this argument, but it will be necessary for the state on remand to present evidence to substantiate these contentions.

further proceedings consistent with this opinion. The record may be returned to the Superior Court.