DECISION
Before this Court is Petitioner Parmand Rampal's (hereinafter "Rampal" or "Petitioner") application for Post-Conviction Relief. Petitioner contends that he was denied his right to effective assistance of counsel in his pleas of nolo contendere to a count of unlawful possession of between one and five kilograms of marijuana and a count of unlawful conspiracy to violate the Rhode Island Uniform Controlled Substances Act ("UCSA").
 I FACTS TRAVEL
On March 9, 1997, Petitioner was the passenger in a motor vehicle registered to his mother but operated by Steven Courtemanche ("Courtemanche") that was pulled over by members of the Rhode Island State Police. After searching the trunk of vehicle, the State Police found a large bundle containing "several large bricks" of marijuana. Petitioner was arrested, held overnight, and presented before the District Court the next morning.[1] Petitioner was ordered held without bail. Thereafter, Criminal Information K2/97-0231 (A)[2] and (B) were filed with the Court by the Attorney General's Office on April 30, 1997. Petitioner, with privately *Page 2 
retained counsel present, was arraigned on May 2, 1997, surety bail was set, and Petitioner was released from custody.
Later, on June 2, 1997, Petitioner appeared before this Court again with the same privately retained counsel for a scheduled pre-trial conference. After conducting a conference with the State and Petitioner's counsel, Petitioner entered his pleas of nolo contendere to a count of unlawful possession of between one and five kilograms of marijuana and a count of unlawful conspiracy to violate the UCSA. This Court, upon the recommendation of the State, sentenced Petitioner to concurrent sentences of 10 years suspended, ten years probation on each count; Petitioner was referred to drug counseling and ordered to complete 100 hours of community service by October 2, 1997 and pay court cost.[3] From a further review of K2/97-0231 (B), the only court actions following the June 2, 1997 disposition date were "cost reviews" that were successfully concluded on April 26, 1999 with all "court assessments paid in full."
On March 10, 2008, Petitioner filed his application for post-conviction relief pursuant to G.L. 1956 § 10-9.1-1. In his application, Petitioner alleged he was ". . . denied . . . equal protection of the law and procedural due process . . . [that] he maintained good, just and meritorious defenses . . ." to the criminal charges. (Petitioner's Application for Post-Conviction Relief (hereinafter "Petition") ¶ 6.) Petitioner further alleged "he was denied the following statutory and constitutional protections and rights:
 a. Right to be apprised of the immigration consequences of such plea pursuant to R.I. Gen. Laws § 12-12-22 as amended;
 b. Right to a suppression hearing herein;
 c. Right to a speedy and public trial;
 d. Right to presumption of innocence;
 e. Right to maintain and secure a proper appeal, if necessary;
 f. Right to confront and cross-examine his accusers;
 g. Right to a jury trial; *Page 3 
 h. Right to effective representation by counsel, including an explanation of the rights and remedies being waived by the entry of the plea;
 i. Being represented by his effective counsel; and
 j. Right to adequately and lawfully be apprised of the sentence sought to be imposed." (Pet. ¶ 7.)
According to Petitioner, because of some or all of these alleged violations ". . . his 5th and 6th Amendment Rights (secured under) to the United States Constitution as made applicable to the States through the Due Process clause of the Fourteenth Amendment of the United States Constitution" were violated. (Pet. ¶ 9.) Petitioner further claimed that his rights secured under Article 1, Section 10 of the Rhode Island Constitution were also violated.
The State of Rhode Island filed its answer to the Petition admitting some of Petitioner's allegations, but denying others. The State additionally moved to dismiss the Petition under Rule 12(b)(6) and/or Rule 56 of the Superior Court Rules of Civil Procedure. Given the high burden of persuasion that a moving party faces to obtain a dismissal of a civil action, coupled with the legal standards that courts are required to employ when ruling on a "Motion to Dismiss for Failure to State a Claim" and/or "Motion for Summary Judgment," the State's Motions were denied.
Petitioner initially alleged, among other violations of his rights, that his right to be apprised of the potential immigration consequences of his plea, pursuant to G.L. 1956 § 12-12-22 as amended, were violated. However, subsequently, in his written "Memorandum of Law Opposing State's Motion to Dismiss and in Support of Application for Post Conviction Relief" (hereinafter "Petitioner's Memorandum") filed June 23, 2008, Petitioner wrote that he "is not urging the Court to apply the provisions of R.I. Gen. Law § 12-12-22 retroactively. Petitioner *Page 4 
conceded that State v. Moniz, 933 A.2d 691 (R.I. 2007) would control in this regard."[4] (Pet'r's Mem. 1.) Petitioner narrowed his focus to "ineffective assistance of counsel." Specifically, he claims that because of his former counsel's conduct, Petitioner lacked sufficient advice to permit Petitioner to evaluate the potential immigration or other consequences of his plea. (Pet'r's Mem. 1.)
Beginning July 8, 2008, this Court conducted numerous conferences with the parties. In addition to determining when to commence the hearing on the Petition, this Court and the parties discussed how, if at all, to obtain "testimonial evidence" from Petitioner's former counsel relating to Petitioner's claim of ineffective assistance of counsel.[5] The Court ordered both counsel to provide this Court with their respective memorandum of law in support of their respective positions.
At the hearing, Petitioner testified. The parties entered into a "Stipulation," which provided: that the "(1) Affidavit of [Petitioner's former counsel] dated 6/19/08 . . ." and "(2) Memo of [an Inspector of the Attorney General's Department] dated 7/8/2008" were admitted as full exhibits. Having received the memoranda, a full evidentiary hearing took place on the Petition and the Court reserved decision. *Page 5 
Petitioner testified he was born in Georgetown, Guyana.[6] He moved to the United States with his mother when he was approximately four years old. At some point while in the United States, Petitioner was issued an "alien card," which his mother had applied for.[7]
Petitioner is presently thirty-four years old. When he was ten, he moved with his mother from New York to Rhode Island. He attended Central High School and later graduated from Mount Pleasant High School in Providence. He testified that English is his first language. After graduating high school, he has worked primarily as an automobile parking lot attendant, later advancing to assistant manager.
Petitioner testified that before the night in question he had never been arrested. Petitioner testified that on the night in question he was the only passenger in his mother's car being operated by his high school friend, Courtemanche. Petitioner testified he and Courtemanche were returning from Foxwoods Casino where he had been drinking alcoholic beverages. Petitioner testified although he was not focusing on the speedometer he did not believe the car to be "speeding." Petitioner testified the vehicle "had a front license plate." Petitioner saw the State Police vehicle as it was entering the highway, then the State Police vehicle passed the vehicle Petitioner was in, slowed down, got abreast, shined a light on the vehicle and then pulled that same vehicle over.
Petitioner further testified that he gave consent for the State Police to search the vehicle. He further testified that unbeknownst to him there was marijuana located in the trunk. Petitioner was arrested along with Courtemanche. They were transported together to a Rhode Island State *Page 6 
Police Barracks. The next morning, Petitioner was arraigned at District Court and ordered held without bail at the Adult Correctional Institution ("ACI"). Petitioner testified that he first met his former counsel during a visit with him at the ACI. He testified that when he met his former counsel Courtemanche was present. When asked by his former counsel "if he wanted to get out of the ACI," he was told by his former counsel "the only way to get out of jail was by pleading `nolo.'" Petitioner further testified this was the only meeting he had with his former counsel at the ACI. According to Petitioner, the next time he spoke to his former attorney was the day Petitioner "got out of jail" following his arraignment in Superior Court.[8] Petitioner testified as a result of his conviction, because he is not a citizen of the United States, immigration proceedings have commenced that likely will result in his deportation to the country of his birth.
Petitioner testified his former counsel never asked if Petitioner was a United States citizen or where Petitioner was born. Petitioner testified further his former counsel did not ask about Petitioner's immigration status or about Petitioner's family. Petitioner additionally testified that he never advised his former counsel that he was not born in the United States.
 II INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM[9] CONSTITUTIONAL STANDARD
Claims of ineffective assistance of counsel are grounded in theSixth Amendment of the United States Constitution, as applied to the States under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. The Sixth Amendment of the *Page 7 
United States Constitution provides, in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." Likewise, Article I, section 10 of the Rhode Island Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel in their defense. . . ."
On numerous occasions, the United States Supreme Court has pronounced what was intended by the "assistance of counsel" clause. In Powell v. State of Alabama,287 U.S. 45, 58 (1932) assistance of counsel was defined as ". . . zealous and active" as opposed to "pro forma." In overturning the convictions of the defendants in Powell, the Court held: "Under the circumstances disclosed, we hold that defendants were not accorded the right of counsel in any substantial sense."Powell, 287 U.S. at 58.
In a different matter before the United States Supreme Court, on federal habeas corpus claims, the defendants argued that their pleas of guilty, while being represented by counsel, were nevertheless the products of coerced confessions. A majority of that Court wrote:
 "Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible in evidence depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases. On the one hand, uncertainty is inherent in predicting court decisions; but on the other hand defendants facing felony charges are entitled to the effective assistance of competent counsel." McMann v. Richardson, 397 U.S. 759, 770-71 (1970) (internal citations omitted).
Rhode Island's post-conviction relief statute provides a well-developed avenue of relief for any person convicted of a crime who claims "[t]hat the conviction . . . was in violation of the constitution of the United States or the constitution or laws of this state." Section 10-9.1-1(a)(1). "An application may be filed at any time." Section 10-9.1-3. *Page 8 
In Rhode Island, as under the United States Constitution, "[w]ith regard to the question of effective counsel, no citation of authority is needed to support the principle that under our state and federal constitutions a[] . . . defendant is entitled to effective assistance of counsel. . . ." State v. Desroches,110 R.I. 497, 500-501, 293 A.2d 913, 916 (1972).
Importantly, "`[e]ffective' [representation] does not mean successful. It means conscientious, meaningful representation wherein the accused is advised of his rights and honest, learned and able counsel is given a reasonable opportunity to perform the task assigned to him." State v. D'Alo, 477 A.2d 89, 91 (R.I. 1984) (quoting Desroches, 110 R.I. at 501, 293 A.2d at 916).
After the McMann Court explicitly articulated theSixth Amendment's guarantee of effective assistance of counsel, the United States Supreme Court announced the benchmark by which all claims of ineffective assistance of counsel are to be considered.Strickland v. Washington, 466 U.S. 668 (1984). InStrickland, the Supreme Court explained that the purpose of the constitutional requirement of effective assistance is "to ensure a fair trial." Id. at 686. This purpose, the Court added, imposes on counsel "the overarching duty to advocate the defendant's cause and the more particular dut[y] to consult with the defendant on important decisions. . . ." Id. at 688.
A "defendant [who] complains of the ineffectiveness of counsel's assistance . . . must show that counsel's representation fell below an objective standard of reasonableness." Id. To show that counsel failed to meet this objective standard of reasonableness, the Strickland Court formulated a two-pronged standard that requires the petitioner to show that trial counsel's performance was deficient and that the deficiency prejudiced the defendant. Id. at 687. As the Court explained, *Page 9 
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
In addition to the two-pronged test, "counsel is strongly presumed to have rendered adequate assistance." Id. at 690.
To satisfy the deficiency prong, Rampal "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. Although the Strickland Court declined to delineate a "set of detailed rules for counsel's conduct," it did note that "[p]revailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable. . . ."Id. at 688; see also U.S. v. Blaylock,20 F.3d 1458, 1466 (9th Cir. 1994) (stating, "under theStrickland test, a court deciding whether an attorney's performance fell below reasonable professional standards can look to the ABA standards for guidance.").
More recently the United States Supreme Court reaffirmed that "[a]lthough they are `only guides,' Strickland,466 U.S. at 688, and not `inexorable commands,' Bobby v. VanHook, 130 S.Ct. 13, 16 (2009), these standards may be valuable measures of the prevailing professional norms of effective representation, especially as these standards have been adapted to deal with the intersection of modern criminal prosecutions and immigration law." Padilla v. Kentucky,___S.Ct.-___, No. 08-651, 2010 WL 1222274, at *7 (Mar. 31, 2010). *Page 10 
The Strickland condemnation of an attorney's unreasonable actions or omissions must be distinguished from tactical decisions made as part of counsel's trial strategy. As our state's Supreme Court explained, "mere tactical decisions, though ill-advised, do not by themselves constitute ineffective assistance of counsel."Toole v. State, 748 A.2d 806, 809 (R.I. 2000). "[A] court must distinguish between tactical errors made as a result of ignorance and neglect and those arising from careful and professional deliberation. . . . `Thus, a choice between trial tactics, which appears unwise only in hindsight, does not constitute constitutionally-deficient representation under the reasonably competent assistance standard.'" D'Alo,477 A.2d at 92 (quoting United States v. Bosch,584 F.2d 1113, 1121 (1st Cir. 1978)).
If the petitioner satisfies the deficiency prong, he must then address the prejudice requirement identified by theStrickland Court. 466 U.S. at 687. To satisfy the prejudice prong, "`[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Brown v. Moran, 534 A.2d 180, 182 (R.I. 1987) (quoting Strickland, 466 U.S. at 694). The Rhode Island Supreme Court recently affirmed this standard in Larnger v.Wall, explaining that "`prejudice exists if there is a reasonable probability that, absent counsel's deficient performance, the result of the proceeding would have been different.'"918 A.2d 850, 856 (R.I. 2007) (quoting State v. Figueroa,639 A.2d 495, 500 (R.I. 1994)). Moreover, the United States Supreme Court addressed the prejudice standard in a post-conviction relief case presenting an ineffective assistance of counsel claim arising out of the plea process. Hill v. Lockhart,474 U.S. 52, 57 (1985). In Hill, the Court explained: "The second, or `prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea *Page 11 
process. In other words, in order to satisfy the `prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."Id. at 59.
Following its initial application of Strickland in November 1984, the Rhode Island Supreme Court has repeatedly endorsed and explained the Strickland standard.See, e.g., Heath v. Vose, 747 A.2d 475, 478 (R.I. 2000) (explicitly stating that Rhode Island has adopted theStrickland standard); Barboza v. State,484 A.2d 881, 883 (R.I. 1984) (recognizing for the first time theStrickland standard). Recently, our Supreme Court stated that it "will reject an allegation of ineffective assistance of counsel `unless the attorney's representation [was] so lacking that the trial has become a farce and a mockery of justice.'"Moniz v. State, 933 A.2d 691, 696 (R.I. 2007) (quotingState v. Dunn, 726 A.2d 1142, 1146 n. 4 (R.I. 1999) (alteration in original)). "`The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" Heath,747 A.2d at 478 (quoting Strickland, 466 U.S. at 686). Moreover, the court must make this determination "based on the totality of the omissions [allegedly] committed" by the petitioner's attorney. Heath, 747 A.2d at 478. The standard set forth in Strickland has rightly been characterized as "highly demanding." Kimmelman v. Morrison,477 U.S. 365, 382 (1986). Nonetheless, the Strickland standard is "by no means insurmountable." Id. *Page 12 
 III ANALYSIS A Deficient Performance
The Court must determine if Petitioner's claim that his right to effective assistance of counsel was violated in light of the decisions by federal courts as well as our Supreme Court. Although Petitioner raised a number of claims, he proceeded only on his claim that his trial counsel's failure to inquire about his immigration status left him exposed to a host of unknown immigration consequences, and thus, constitutes ineffective assistance of counsel. In order for Petitioner to prevail, he must do so by a fair preponderance of the evidence. Burke v. State,925 A.2d 890, 892 (R.I. 2007) (quoting Larnger,918 A.2d at 855).
Prior to the recent Padilla decision, the decisions from some appellate courts, both federal and state, were almost unanimous: the failure of counsel to advise his/her client about possible immigration consequences did not constitute ineffective assistance of counsel. A familiar basis for that reasoning was:
 "actual knowledge of consequences which are collateral to the guilty plea is not a requisite to the entry of a knowing and intelligent plea. A deportation proceeding is a civil proceeding which may result from a criminal prosecution, but is not a part of or enmeshed in the criminal proceeding. It is collateral to the criminal prosecution. While the Sixth Amendment assures an accused of effective assistance of counsel in criminal prosecutions this assurance does not extend to collateral aspects of the prosecution." Santos v. Kolb, 880 F.2d 941, 944 (7th Cir. 1989) (quoting United States v. George, 869 F.2d 333, 337 (7th Cir. 1989)).
 ". . . the possibility of deportation is only a collateral consequence [of a plea] because that sanction is controlled by an agency which operates beyond the direct authority of the trial [justice]." Ducally v. State, 809 A. 2d 472, 474 (R.I. 2002) (citing State v. Desir, 766 A.2d 374,376 *Page 13 
(R.I. 2001)); State v. Alejo, 655 A.2d 692 (R.I. 1995) (quoting State v. Figueroa/Tavarez, 639 A.2 495, 499 (R.I. 1994)).
However, the United States Supreme Court in Padilla ruled: "We . . . have never applied a distinction between direct and collateral consequences to define the scope of constitutionally `reasonable professional assistance' required under Strickland. Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation."Padilla, 2010 WL 1222274 at *6. The majority of the Court further held: "We conclude that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel. Strickland applies to Padilla's claim." Id.
In Padilla, the petitioner claimed his counsel not only failed to advise him of adverse immigration consequences, but also that counsel advised him he "`did not have to worry about immigration status since he had been in the country so long.'"Id. at *3. The Court recognized that:
 "[i]mmigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." Id. at *8 (emphasis added).
As courts have previously noted, where standards have been adapted to deal with the intersection of modern criminal prosecutions and immigration law, "they are `only guides' and not `inexorable commands.'" Id. at *7 (citing Strickland,466 U.S. at 688; Van Hook, 130 S.Ct. at 16). The existence of professional standards may be of some value in measuring prevailing *Page 14 
professional norms at the time of the allegedly deficient representation. Id. In Van Hook, the United States Supreme Court reviewed a Sixth Circuit decision granting post-conviction relief, which based its finding that the attorney's presentation and investigation of mitigating evidence was deficient according to 2003 ABA guidelines. 130 S.Ct. at 16. The United States Supreme Court reversed the decision because the Court of Appeals applied ABA guidelines that were not in effect until eighteen years after the attorney-client representation at issue. Id. The Court held that "[j]udging counsel's conduct in the 1980's on the basis of the[] 2003 Guidelines — without even pausing to consider whether they reflected the prevailing professional practice at the time of the trial — was error." Id. at 17.
Mindful of the appellate court's error in Van Hook, this Court will apply the "prevailing professional norms" in effect at the time Petitioner entered his plea.Id. at 16 (citing Strickland, 466 U.S. at 686). The American Bar Association Standards for Criminal Justice, Second Edition, 1986 § 14-3.2 entitled Relationship between defensecounsel and client provided:
 "(a). Defense counsel should conclude a plea agreement only . . . (b) after appropriate investigation, should advise the defendant of the alternatives available and of considerations deemed important by defense counsel or the defendant in reaching a decision."
The commentary to this standard advised:
 "(T)he standard also recognizes the need for counsel to advise the defendant on other considerations "deemed important by defense counsel or the defendant." Many collateral consequences may follow conviction, such as the loss of civil rights . . . and even deportation or expatriation. . . ."
In the instant matter, Petitioner testified his former counsel never asked if Petitioner was a United States citizen or where Petitioner was born; former counsel did not ask about Petitioner's immigration status or about Petitioner's family. Nor, according to Petitioner, did he ever inform his former counsel that he was not born in the United States. Similar to the lack of *Page 15 
advice claim present in Padilla, there is no factual dispute in this matter. There was no immigration advice here. Petitioner's former counsel admitted, "he did not ask Mr. Rampal about his immigration status nor did he discuss the immigration consequences of his plea since he thought he (Rampal) was a citizen."[10]
Although at the plea Petitioner represented he was a citizen of the United States, the failure of former counsel to investigate or even ask about Petitioner's status as a citizen fell below the duty imposed upon counsel and undeniably deprived Petitioner of the ". . . conscientious, meaningful representation wherein the accused is advised of his rights and honest, learned and able counsel is given a reasonable opportunity to perform the task assigned to him."D'Alo, 477 A.2d at 91 (quoting Desroches,110 R.I. 501, 293 A.2d at 916).
The Court finds that Petitioner has satisfied the first prong ofStrickland.
 B Prejudicial Outcome
Both Strickland and Figueroa command that ". . . prejudice exists if there is a reasonable probability, that absent counsel's deficient performance, the result of the proceeding would have been different." Strickland, 466 U.S. at 687;Figueroa, 639 A.2d at 500; see also Larngar,918 A.2d at 856. In addition, when evaluating ineffectiveness in a plea, a petitioner ". . . must demonstrate a reasonable probability that but for counsel's errors, he or she would not have pleaded . . . and would have insisted on going to trial."Figueroa,639 A.2d at 500 (citing Hill, 474 U.S. at 59). Lastly, a petitioner must show the outcome of the case would have been different had he or she been aware of the likely deportation consequences of the plea. Figueroa, 639 A.2d at 500 (citingHill, 474 U.S. at 57). *Page 16 
Petitioner alleged that ". . . he maintained good, just and meritorious defenses to the . . . charges. . . ." Petitioner faced two felony offenses, unlawful possession of between one and five kilograms of marijuana and a count of unlawful conspiracy to violate the UCSA.
According to the "Police Narrative" contained within the Information Package, when the vehicle was stopped one member of the Rhode Island State Police approached the operators' side (Courtemanche), the other State Police officer approached the passenger side (Rampal). The trooper that approached the operator's side "immediately detected a strong odor of marijuana emitting from the within vehicle." The troopers claimed they observed marijuana debris "on both front seats." Upon advising the operator to exit the vehicle, the trooper "observed small pieces of marijuana debris on his shirt." According to the narrative, "the operator advised Troopers that he and the passenger were smoking marijuana earlier but had none left."
Although Petitioner reportedly gave consent to the Rhode Island State Police to search his mother's vehicle, nothing contained within the Criminal Information indicates that Petitioner had actual possession of between one and five kilograms of marijuana or admitted to an agreement with Courtemanche regarding the marijuana. The law is clear, "possession . . . means an intentional control of a designated object with knowledge of its nature." State v.Gilman, 110 R.I. 207, 215, 291 A.2d 425, 430 (1972). The State is required to prove all the elements of offenses charged. The State was required to prove that the possession by Petitioner was with knowledge.
If counsel had not been deficient in determining his client's immigration status or knew his client was not a citizen who faced deportation as a result of the plea, there was a reasonable possibility that Petitioner would have insisted on a trial. *Page 17 
Based upon the evidence submitted at hearing, the Court is satisfied that Petitioner has demonstrated, by a fair preponderance of evidence, that the outcome would have been different had he known he faced deportation as a consequence of his plea.
 C Laches
The State advanced the defense of laches to granting the petition. As the State argued:
 "The doctrine of laches is based upon maxim that equity aids the vigilant and not those who slumber on their rights. It is defined as neglect to assert a right or claim which, taken together with lapse of time and other circumstances causing prejudice to adverse party operates as a bar in court of equity." (State's Mem. 13 (citing Black's Law Dictionary 6th ed.)).
The defense of laches may apply in the post-conviction context in Rhode Island. Raso v. Wall,884 A.2d 391 (R.I. 2005). The burden is upon the party raising the defense of laches to establish factually that the delay was both unreasonable and prejudicial to that party.
The State argued, in part, it would be prejudiced [by granting the petition] because ". . . it would be impossible for the State to prosecute a criminal case over eleven years later, as witnesses may no longer be available and drugs that were found in the Petitioner's motor vehicle are most likely no longer in the custody, possession or control of the Rhode Island State Police." At the hearing, to the extent that it did offer evidence of prejudice, the State failed to persuade this Court that prejudice should compel a denial of the Petition.
 CONCLUSION
After reviewing the record, this Court finds that Petitioner's nolo contendere pleas were entered in violation of hisSixth Amendment right to effective assistance of counsel. For all the reasons stated above, this Court grants the petition for post-conviction relief. The Court orders that the plea of nolo contendere previously entered in K2/97-0231B is vacated and that the *Page 18 
matter is to be scheduled for further proceedings thereon. Counsel for Petitioner shall submit an appropriate Order.
[1] These "facts" recited herein were obtained from the "criminal information affidavit" and the "police narrative" that formed the basis of probable cause for the Criminal Information filed in K2/97-0231(A) and (B).
[2] The defendant named in K2/97-0231(A) was Steven Courtemanche.
[3] These details were obtained from the Court File in K2/97-0231(B).
[4] In John Moniz v. State of Rhode Island,933 A.2d 691 (R.I. 2007) where the plea of nolo contendere was entered October 24, 1996, the statute G.L. 1956 § 12-12-22(b) that obligates the trial justice to advise a defendant of immigration consequences was not enacted until July 6, 2000 and the Rhode Island Supreme Court held that ". . . § 12-12-22(b) does not carry retroactive effect." Id at 697.
[5] It is undisputed by the parties that Petitioner's former counsel is no longer practicing law because of a serious medical condition and not as a result of any disciplinary complaints. According to the Rhode Island Supreme Court Clerk's Office, Petitioner's former counsel became "inactive" on October 5, 2001. The fact that Petitioner's former counsel is no longer engaged in the practice of law does not factor one way or the other into the merits of this decision.
[6] "Guyana (formerly British Guiana) is located in Northern South America, bordering the North Atlantic Ocean, between Suriname and Venezuela. Guyana was originally a Dutch colony in the 17th century, by 1815 Guyana had become a British possession. The abolition of slavery led to black settlement of urban areas and the importation of indentured servants from India to work the sugar plantations. Guyana achieved independence from the UK in 1966, and since then it has been ruled mostly by socialist-oriented governments." https://www/cia.gov/library/oublications/ the-world-factbook/geos/gy.html.
[7] The former "Alien Registration Card" or "Green Card" is currently referred to as a "Permanent Resident Card." United States Immigration Direct. http://www.immigrationdirect.com/faq/permanent_resident_cards.jsp.
[8] A review of the Criminal Information K2/97-0231B reveals that on May 2, 1997: Petitioner was arraigned on the charges, former counsel entered an appearance at the arraignment, bail was set at $20,000, and surety was posted that day.
[9] Petitioner offered as a full exhibit (Pet'r's Ex. 11) the written decision filed on August 21, 2008 in RobertoBrito-Batista v. State of Rhode Island, PM-2004-3770, by a Superior Court Associate Justice as "persuasive authority." This Court will acknowledge the Associate Justice's scholarly research and writing in the Brito-Batista v. State matter and will rely on parts of that decision herein.
[10] From the "Interview" conduct by a member of the Attorney General's department of Petitioner's former counsel. (Respondent's Ex. "E.")