NORMAN PORTER, JR. *vs.* SUPERINTENDENT, MASSACHUSETTS
CORRECTIONAL INSTITUTION, CONCORD, & others.[1]

Essex. December 4, 1980. — March 5, 1981.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

*Practice, Criminal*, Duplicitous punishment, Sentence, Plea. *Homicide*.

Where there was nothing in the record of a criminal case to indicate that
the defendant's plea of guilty to second degree murder rested on a
felony-murder theory, the imposition of consecutive life sentences
after pleas of guilty to the murder and to a related indictment charging
armed robbery was not shown to have violated the principles estab-
lished in *Commonwealth* v. *Stewart*, 375 Mass. 380 (1978), and *Com-
monwealth* v. *Wilson*, 381 Mass. 90 (1980). [113-118]

PETITION filed in the Superior Court Department on July
22, 1980.

The case was heard by *Bennett*, J., and was reported by
him to the Appeals Court. The Supreme Judicial Court
granted a request for direct review.

*Michael D. Cutler* for the plaintiff.

*Kevin J. Sullivan*, Assistant Attorney General, for the de-
fendants.

HENNESSEY, C.J. The petitioner, Norman Porter, Jr.,
filed a complaint for habeas corpus and declaratory relief in
the Superior Court for the county of Essex. After a hearing
on the merits, at the judge's initiative and with the consent
of the parties, the case was reported to the Appeals Court
along with a statement of agreed facts. See Mass. R. Civ.
P. 64, 365 Mass. 831 (1974); G. L. c. 231, § 111. We
granted direct appellate review. We conclude that the peti-
tioner is not entitled to the relief sought.

---

[1] Commissioner of Correction and the Parole Board.

We detail the history of this case from the statement of agreed facts accompanying the report of the Superior Court judge. On May 14, 1962, Porter was brought to trial in the Superior Court in Essex County on indictments arising out of the robbery of a Robert Hall clothing store in Saugus, during which a homicide occurred. The indictments charged Porter with murder in the first degree, armed robbery while masked, and related firearms violations. On the sixth day of trial, over the prosecutor's objection, the Superior Court judge accepted Porter's guilty pleas to the armed robbery and firearms charges, and his guilty plea to so much of the murder indictment as charged murder in the second degree. At the same time, the judge accepted guilty pleas on Porter's other pending Essex County indictments, arising out of a Lynnfield armed robbery and a Beverly Farms robbery attempt. In all, Porter pleaded guilty to nine felony indictments arising out of three separate incidents.

After accepting all the guilty pleas, the judge imposed a comprehensive and somewhat complicated sentencing scheme. For the purposes of disposition of this case, only the Saugus murder and robbery sentences are of primary relevance. On the Saugus second degree murder conviction, the judge sentenced Porter to a term of life imprisonment,[2] to be served from and after another, unrelated life sentence for second degree murder of which Porter had been convicted the year before in the Superior Court in Middlesex County.[3] A term of life imprisonment was also imposed on the Saugus armed robbery conviction.[4] This

---

[2] The parties have designated this sentence the "C" sentence.

[3] The parties have designated this Middlesex sentence the "A" sentence.

[4] The parties have designated this sentence the "B-2" sentence. On the Lynnfield armed robbery conviction, the petitioner received a similar sentence (designated the "B-1" sentence), also to be served concurrently with the Middlesex sentence.

The sentences on the remaining felony convictions were for terms of years, all of which have expired.

life sentence, however, was to be served concurrently with the Middlesex life sentence, and hence was to begin immediately. In effect, therefore, Porter received a life sentence for the armed robbery and a consecutive life sentence for the murder.

In June of 1975, the Middlesex life sentence was commuted, and Porter was paroled from that sentence to the Saugus armed robbery life sentence. The following September, the latter sentence was commuted, and Porter was paroled from that sentence. Since then, the only sentence he has been serving is the life sentence for the Saugus second degree murder conviction.[5]

The primary issue on this appeal, and the first question reported by the Superior Court judge, is whether the imposition of the consecutive life sentence for murder violated the principles of *Commonwealth* v. *Stewart*, 375 Mass. 380 (1978), and *Commonwealth* v. *Wilson*, 381 Mass. 90 (1980).[6]

---

[5] Although Porter does not raise the point in his brief, our examination of the facts reveals the distinct possibility that he is entitled to approximately fifty-five days of credit for time served between his parole from the "A" sentence to the two "B" sentences and his parole from the "B" sentences to the "C" sentence, inasmuch as the petitioner was supposed to begin serving the "C" sentence as soon as the "A" sentence was completed.

[6] The following three questions were reported by the Superior Court judge:

"a) Does the imposition of the 'C' sentence [the Saugus murder life sentence] on the facts of this case violate the principles of the cases of *Commonwealth* v. *Stewart*, [375 Mass. 380 (1978)], and *Commonwealth* v. *Wilson*, [381 Mass. 90 (1980)], which prohibit consecutive sentencing under certain circumstances?

"b) On the facts of this case, if the sentences are to be reformed, should the murder ('C') sentence be made to run concurrently with the armed robbery ('B-2') sentence?

"c) If the murder sentence is reformed to run concurrently with the armed robbery sentence, must the petitioner be paroled from his murder sentence on the same terms as his current parole, without a new hearing before the Parole Board?"

As we have decided the first question adversely to the petitioner, we need neither answer nor discuss the second and third questions.

Porter claims, as did the petitioners in *Richard* v. *Commonwealth*, 382 Mass. 300, 302 (1981), that his second degree murder conviction was based on a felony-murder theory which, under our decisions in *Stewart* and *Wilson*, precluded consecutive sentencing for the murder and the underlying felony of armed robbery. In rejecting this same contention in *Richard* v. *Commonwealth*, *supra* at 306, we stated that "[w]e are dealing here, not with jury verdicts of murder [as was the case in both *Stewart* and *Wilson*], but with guilty pleas to second degree murder. Nothing that we have said in *Stewart* or *Wilson* makes the principles of those cases applicable to such guilty pleas." Although this broad statement would seem to conclude our review here, certain differences between the situation in *Richard* and the one now confronting us persuade us of the need for further elaboration.

Unlike the record in *Richard* v. *Commonwealth*, which contained the full trial transcript, the only factual record in this case is the transcript of the petitioner's probable cause hearing. This transcript contains Porter's confession, as testified to by a State police officer. Also included is the confession of Porter's codefendant, Theodore Mavor, who was convicted separately on indictments stemming from the Saugus robbery.[7] The Commonwealth introduced both confessions at Porter's trial. Despite diligent search, the parties have been unable to find the transcript of the trial evidence. The parties did manage to find the transcript of the sixth day of trial, on which Porter changed his plea to guilty.

According to Porter's confession as presented at the probable cause hearing, he, Mavor, and a third man drove to Maine, where Mavor purchased a .38 caliber blue steel revolver with Porter's money. The next day, with money given him by Mavor, Porter bought a box of fifty .38 caliber bullets. Also purchased were two brown felt hats and a briefcase for use during the robbery. The Robert Hall

---

[7] The codefendant received life sentences for armed robbery and for murder, the sentences to be served concurrently. Whether the murder conviction was for first or second degree murder is not stated in the record.

clothing store was selected for robbery because Mavor had worked there and knew the lay-out of the store.

Porter and Mavor, wearing hats and bandanas, entered the store just before it closed on the evening of September 29, 1960. Mavor was armed with the blue steel revolver and Porter was carrying a shotgun, and a pearl-handled revolver. Mavor said, "This is a hold-up. Everybody into the back room." Porter herded the customers and clerks into the back room and told them to get out their wallets. He had the shotgun pointed at the racks of clothing. Hearing a commotion behind him, he turned and the shotgun went off. He saw a man fall to the floor. He then heard several shots fired, presumably from Mavor's gun. Mavor was having some trouble and asked Porter for the shotgun, which Porter gave to him. Porter heard more shooting. The two then escaped.

A State police officer testified that when called to the scene, he saw the dead body of a man, identified as John Pigott, a clerk on duty at the store. According to the medical examiner, Pigott had been killed by a shotgun blast to the neck. A shotgun was found at the scene of the murder.

Porter claims that, in all likelihood, his conviction for second degree murder was based on a felony-murder theory. He argues that the shotgun was fired "apparently inadvertently," and points to the arguments on disposition after the entry of the guilty plea, during which his counsel made reference to a felony-murder theory. The district attorney, on the other hand, during his argument on disposition, referred to alleged trial evidence in which Porter was said to have told his captives after he shot Pigott, "Now you know I mean business." The Commonwealth argues that this indicates the case was proceeding on a theory of "specific intent," i.e., an intent to murder independent of any felony-murder theory. As was true in *Richard* v. *Commonwealth*, 382 Mass. 300, 305 (1981), the record contains no indication of whether, by pleading guilty to so much of the first degree murder indictment as charged second degree murder, Porter was pleading guilty to felony-murder or to premeditated murder or other murder with malice aforethought.

Consecutive sentences for the murder and the armed robbery would have been impermissible, as duplicitous, if a jury had convicted Porter of murder after instructions from the judge establishing felony-murder as a basis, or one of the permissible bases, for such a verdict. *Commonwealth v. Wilson*, 381 Mass. 90, 124 (1980) (consecutive sentences impermissible because of the possibility that the jury verdict was based on a felony-murder theory). See *Commonwealth v. Richard, supra* at 306. As we explained in *Richard*, however, jury verdicts of murder are to be distinguished from guilty pleas to second degree murder. *Id.* All that must be proved for a conviction of second degree murder is malice aforethought; neither an underlying felony nor an intentional killing is required. In *Richard*, there was ample evidence of malice aforethought, *id.* at 307, and the petitioners there failed to prove their convictions were based on felony-murder. In the present case, due to its antiquity and the inadequacy of the record, we have no way of determining whether malice existed independent of the felony of armed robbery.

The guilty pleas here were accepted almost twenty years ago. The longer the time between a guilty plea and a challenge involving the sentence based on the plea, the more difficult it is to reconstruct the understanding of the parties to the plea bargain (if any bargain was made) and of the judge in accepting the plea.[8] We think the burden in the situation before us properly rests on the petitioner. Cf. *Commonwealth v. Bolduc*, 375 Mass. 530, 536 (1978), and cases cited, stating that a defendant challenging a guilty plea entered into before the Supreme Court's decision in *Boykin v. Alabama*, 395 U.S. 238 (1969), on the ground that it was made involuntarily has the burden of showing the claimed involuntariness. Just as a defendant challenging a pre-*Boykin* guilty plea bears the burden of proving that the plea was involuntary, so here a defendant challenging the

---

[8] The judge who presided at the petitioner's trial and accepted his guilty pleas is deceased.

sentencing imposed upon a guilty plea to second degree murder bears the burden of proving that the plea rested on a felony-murder theory. If the defendant fails to meet this burden, the consecutive sentence imposed for the felony conviction (or, as in this case, for the murder conviction) will be upheld.

We conclude that Porter has failed to prove that his murder conviction was for felony-murder. By pleading guilty to second degree murder, which does not require a felony as an element and which does require malice, Porter can be said to have admitted malice. See *Commonwealth v. Morrow*, 363 Mass. 601, 607 (1973) ("A judge may accept a guilty plea even though there is no separate, express admission by the defendant that he committed . . . the crime charged"). Cf. Mass. R. Crim. P. 12 (c) (5) (A), 378 Mass. 869 (1979) (requiring a hearing to determine that there is a factual basis for the charge). Porter does not claim that the guilty plea was unintelligent or involuntary, or that there was no factual basis for the plea.[9] Cf. *Henderson* v. *Morgan*, 426 U.S. 637 (1976); *North Carolina* v. *Alford*, 400 U.S. 25 (1970); *Boykin* v. *Alabama, supra*; *Commonwealth* v. *Morrow, supra.* Such a claim would be difficult to sustain where, as here, a petitioner freely admits he committed a greater crime than that to which he pleaded guilty.[10] A plea of guilty is usually made in anticipation of a lighter sentence. Conviction of first degree felony murder — the crime Porter admits having committed — would have earned him life imprisonment without parole, at the very

---

[9] If it were necessary for the Commonwealth to show a factual basis, it could persuasively contend that an inference of malice arose from the shooting, considering the circumstances and the jury's privilege to disbelieve that the shooting was accidental.

[10] See, e.g., *State* v. *Gustafson*, 298 Minn. 200, 200-201 (1974) (the defendant was charged with second degree murder, which the facts showed he committed, and pleaded guilty to third degree murder; the Minnesota Supreme Court held that the "[d]efendant will not now be permitted to complain because at his own request he was permitted to plead guilty to a crime of lesser degree even though the facts might not clearly support the offense pled to").

least, and could even have subjected him to the death penalty. By pleading guilty to a crime of lesser degree, Porter can be presumed to have admitted sufficient facts to establish that lesser crime. Cf. III A.B.A. Standards for Criminal Justice, Pleas of Guilty 14-3.1 (b) (ii) (2d ed. 1980), and commentary (allowing guilty pleas to less serious offenses "reasonably related to defendant's conduct," even if proof of different facts would be required for the less serious offense); Mass. R. Crim. P. 12 (b) (1) (A), 378 Mass. 867 (1979) (authorizing charge concessions).

As consecutive sentences were permissible based upon Porter's guilty pleas to second degree murder and to armed robbery, we answer reported question (a) in the negative. We need not reach the remaining questions. A declaration of rights consistent with this opinion is to be entered in the Superior Court.

*So ordered.*