DECISION
This is an action for post-conviction relief in which petitioner Timothy Jackson contends that the imposition of a life sentence for robbery consecutive to a life sentence for murder, following his guilty pleas to both offenses, violates the double jeopardy clauses of the United States and Rhode Island Constitutions. He argues that he pleaded guilty to felony murder, with robbery as the underlying felony, such that the robbery conviction merged into the murder conviction. He asks, therefore, that this Court vacate the life sentence imposed for robbery. The State objects, arguing that the guilty pleas must be left undisturbed. For the reasons set forth in this Decision, this Court denies Jackson's petition for post-conviction relief and allows his consecutive life sentences for murder and robbery to stand.
 Facts and Procedural History
A Grand Jury indicted petitioner Timothy Jackson and his co-defendant Leroy Olney in 1989 and charged them both with one count of first degree murder, in violation of R.I. Gen. Laws § 11-23-1, and one count of first degree robbery, in violation of R.I. Gen. Laws § 11-39-1(a). The State filed a notice with the Superior Court on August 8, 1989, pursuant to R.I. Gen. Laws 1956 § 12-19-2.-3, that it would be seeking penalties of life without parole in the event *Page 2 
that the defendants were convicted of murder.[1] On September 26, 1990, Jackson and Olney waived their rights to trial and together entered guilty pleas before Rhode Island Superior Court Justice Corinne Grande to both the murder and robbery charges in the indictment. They engaged in a plea colloquy with the Court, as follows:
 THE COURT: With respect to both Mr. Olney and Mr. Jackson, it's important that each of you understand that in addition to the rights which your lawyers have explained to you, if there were any legal issues that your lawyers raised in your cases, by pleading guilty, you're giving up all of those legal rights. Do you understand that, Mr. Olney?
 DEFENDANT OLNEY: Yes, ma'am.
 THE COURT: And do you, Mr. Jackson?
 DEFENDANT JACKSON: Yes, ma'am. . . .
 THE COURT: Now, by pleading guilty, each of you is giving up your right to a trial by jury. . . . You're giving up the right to make the State prove each charge against you beyond a reasonable doubt. . . . You're giving up the right to take the stand, if you wanted to do so, or to present evidence in your own behalf or to testify if you wanted to. . . . Do you understand that, Mr. Olney?
 DEFENDANT OLNEY: Yes, your Honor.
 THE COURT: Do you, Mr. Jackson.
 DEFENDANT JACKSON: Yes, your Honor. . . .
 THE COURT: Mr. Ryan, do you wish now to set out the facts that support these pleas?
 MR. RYAN: Yes, your Honor. *Page 3 
 If this case were to proceed to trial, your Honor, the State is prepared to prove beyond a reasonable doubt that on May 24th of 1989, these two individuals, Mr. Olney and Mr. Jackson, along with a third person, Ralph Manchester, went into the home of Blanche Marcotte at 17 Douglas Circle in the Town of Smithfield, Rhode Island, in the evening hours of that day with the intent to rob property from her and from that house. The outside wires on the house were cut by Mr. Jackson. There was a knock at the door, again by Mr. Jackson. The three of them entered her home at 17 Douglas Circle, they engaged in a struggle with Mrs. Marcotte. Mr. Jackson held Mrs. Marcotte in a headlock. Mr. Olney and Mr. Manchester searched the house for valuables. Mr. Manchester left the house and left with a radio. Mr. Olney and Mr. Jackson stayed inside the house with the deceased, Blanche Marcotte. She was taken into her bedroom. There she was murdered. She was stabbed eighteen times, and each of these defendants before the Court participated in the act of murder. When they left, additional property was taken out on that date and on subsequent dates. There was money taken, jewelry taken, an iron was taken and a starter's pistol was taken, your Honor. And if the case were to proceed to trial, the State is satisfied we could prove those facts beyond a reasonable doubt. . . .
 THE COURT: Leroy Olney, on the charge that at some time between May 24, 1989 and May 25, 1989, at Smithfield, you did murder Blanche Marcotte, how do you now answer?
 DEFENDANT OLNEY: Guilty, but there's a lot to it, you know.
 THE COURT: On Count 2, on the charge that at the same time, same date, you did rob Blanche Marcotte how do you now answer?
 DEFENDANT OLNEY: Guilty.
 THE COURT: Timothy Jackson, on the charge that at some time between May 24, 1989 and May 25, 1989, at Smithfield, you did murder Blanche Marcotte, how do you now answer?
 DEFENDANT JACKSON: Guilty, your Honor.
 THE COURT: On the charge that at the day, you did rob Blanche Marcotte how do you now answer?
 DEFENDANT JACKSON: Guilty, your Honor.
(Tr. of Plea at 13, 15, 19-20, 22). *Page 4 
After accepting the two guilty pleas, Justice Grande sentenced Jackson and Olney each to serve consecutive life sentences for murder and robbery.
On March 1, 1999, petitioner Jackson, acting pro se, filed an application for postconviction relief, pursuant to R.I. Gen. Laws 1956 § 10-9.1-1, asking this Court to vacate his consecutive life sentence for robbery. He contends that the Court sentenced him for both felony murder and the underlying felony of robbery[2] in violation of his rights under the double jeopardy clauses of the Fifth Amendment to the United States Constitution and Article I, Section 7 of the Rhode Island Constitution.[3] The Superior Court appointed counsel for petitioner Jackson on April 13, 1999. The Court file indicates no action thereafter until August 2005, when the court appointed new counsel for petitioner Jackson. On October 19, 2005, counsel filed an amended application for post-conviction relief on behalf of petitioner Jackson. In that amended application, petitioner Jackson reiterated his claim of a violation of the prohibition against double jeopardy and also asserted a claim of ineffective assistance of counsel at the time of his plea as a result of his attorney's failure to recognize the double jeopardy issue. This Court convened a hearing on petitioner Jackson's amended petition for post-conviction relief on May 12, 2006, at which the petitioner voluntarily dismissed his claim of ineffective assistance of counsel, with prejudice, with the agreement of the State.
Petitioner Jackson contends, in reliance on the plea transcript and other evidence extrinsic to the plea, that his plea to murder was grounded on a theory of "felony murder." He argues that *Page 5 
the case law is clear that when a murder conviction is based on a felony murder theory, the underlying felony merges into the felony murder and may not be the subject of a separate and additional conviction or sentence.
The State responds, as a threshold matter, that petitioner Jackson's claim is barred by laches. It then argues that the judgment gives no indication that the conviction for murder was felony murder and that the record of the plea hearing shows that the defendant pleaded to two separate charges. Furthermore, it argues that petitioner Jackson waived his right to an evidentiary hearing when he entered the guilty plea and cannot use evidence extrinsic to the plea itself to alter the plea.[4]
 Standard of Review
Under the Rhode Island Post-Conviction Relief Act, a person who has been convicted of, or sentenced for, a crime and claims that the "conviction or sentence was in violation of the constitution of the United States or the constitution or law of this State," may bring an action for a post-conviction remedy. R.I. Gen. Laws § 10-9.1-1(a)(1). The petitioner bears the burden of proving, by a preponderance of the evidence, that a violation has occurred. Washington v. State,2005 WL 1792122 at *12 (R.I.Super.Ct. 2005) (Savage, J.). *Page 6 
 Analysis Doctrine of Laches
The State contends that the petitioner's application for post-conviction relief is barred by laches. The Rhode Island Supreme Court recently recognized that the defense of laches may, in appropriate circumstances, be properly invoked by the State as an affirmative defense to an application for post-conviction relief. Raso v. Wall,884 A.2d 391, 394 (R.I. 2005). To prevail with a defense of laches, the State has the burden of proving, by a preponderance of the evidence, that the applicant negligently delayed asserting a known right and that the State is prejudiced by that delay. See Oliver v. U.S.,961 F.2d 1339, 1342 (7th Cir. 1992) ("This doctrine [of laches] requires more than mere delay — the [applicant's] delay must be inexcusable as well as prejudicial to the government."); see also Pukas v. Pukas, 247 A.2d 427,429 (R.I. 1968) ("[A]s is well settled, laches does not arise out of delay alone but out of delay which, unexplained, operates to the prejudice of the other party."); Gorham v. Sayles, 50 A. 848, 850 (R.I. 1901) ("Laches in a legal significance is not mere delay, but delay that works a disadvantage to another."). The determination of this issue is a question of fact and must be made in light of the circumstances of each particular case. Raso, 884 A.2d at 396.
In Raso, the Supreme Court construed R.I. Gen. Laws § 10-9-1-3 as allowing the State to defend an application for post-conviction relief on grounds of laches. 884 A.2d at 395. In that case, the State asserted the defense of laches when the applicant filed for post-conviction relief some twenty-eight years after entry of his guilty plea.Id. at 393-94. While the statute provides that "[a]n application [for post-conviction relief] may be filed at any time," the court reasoned that adhering to the "plain meaning" approach to statutory construction would lead to an absurd *Page 7 
result. Id. at 395; R.I. Gen. Laws § 10-9.1-3. Because of potential prejudice to the State, the statutory term "any time" was construed to mean "any reasonable time." Raso, 884 A.2d at 395. The case was remanded to the Superior Court to enable it to make the necessary factual findings with respect to the laches issue.[5]
In this case, the doctrine of laches is not a bar to petitioner Jackson's claim because the State has not met its burden of proving either the petitioner's unreasonable delay in filing this petition or prejudice from any such delay to the State. In fact, the State's answer does not include any factual allegations as to the laches issue; it simply asserts the defense. Moreover, at the hearing on petitioner Jackson's application for post-conviction relief, the State adduced no evidence in support of its defense of laches nor does the record of the hearing, counsel's arguments or the memoranda of the parties shed any light on the reasons, if any, for the delay or the prejudice, if any, to the State from the delay. As such, the State has failed to meet its burden of proving unreasonable delay and prejudice and thus cannot defeat this petition for postconviction relief on grounds of laches.[6]
 Merger Doctrine
The double jeopardy clause prohibits more than one prosecution, conviction, or punishment for the same offense.[7] In determining whether a defendant is being punished twice for the same act, in violation of his constitutional rights, "the test has traditionally been whether *Page 8 each offense requires proof of a fact that the other does not."State v. Lemon, 497 A.2d 713, 719 (R.I. 1983) (citing Blockberger v.U.S., 284 U.S. 299 (1932)) (emphasis added). The Blockberger test applies to challenges under either the federal or state constitution.See State v. Davis, 384 A.2d 1061, 1064 (R.I. 1978).
It is settled law in Rhode Island that the double jeopardy clause bars a conviction of an underlying felony when that offense is used to form a basis for felony murder.[8] State v. Innis, 391 A.2d 1158 (R.I. 1978) (rev'd on other grounds, 446 U.S. 291 (1980)); State v. Powers,526 A.2d 489 (R.I. 1987); State v. Villani, 491 A.2d 976 (R.I. 1985); see alsoHarris v. Oklahoma, 433 U.S. 682 (1977) (United States Constitution). InInnis, the Rhode Island Supreme Court reiterated the merger doctrine, reasoning that the crime of felony murder and its underlying felony merge because the only element that distinguishes the two crimes is proof of the victim's death. Innis, 391 A.2d at 1166. In that case, the jury found the defendant guilty of murder, robbery, and kidnapping. The Court remanded the case to the Superior Court, instructing that if, upon retrial, the defendant was convicted on the murder count under a felony murder theory, then he could not be punished for the underlying felony of robbery. If, instead, he was convicted of murder under another theory or was acquitted of the murder charge, then he could be convicted of the robbery if the evidence so warranted. In both Powers andVillani, the Rhode Island Supreme Court remanded the cases with specific instructions to vacate the defendants' convictions for robbery. The juries — in each of the two cases — had found the defendants guilty of robbery and felony murder, with robbery being the underlying felony. The robbery offenses, *Page 9 
therefore, merged into the offenses of first degree murder, and the double jeopardy clause required vacation of the convictions for the underlying felonies.
In this case, the charge of murder to which petitioner Jackson pleaded guilty arguably encompasses both premeditated and deliberate first degree murder and felony murder, as the indictment did not particularize the nature of the murder charge. The threshold question is whether the petitioner pleaded guilty to premeditated and deliberate first degree murder and robbery, which would pose no constitutional violation, or felony murder and robbery (as the underlying felony to the murder) which petitioner Jackson argues would violate the constitutional prohibition against double jeopardy. See R.I. Gen. Laws § 11-23-1. If it is unclear to which type of murder Jackson pleaded guilty, then the next question is whether his robbery conviction and sentence should be vacated in the presence of factual ambiguity.
With jury verdicts, even when it is not clear whether a jury convicted a defendant of first degree murder based on a theory of premeditated and deliberate first degree murder or felony murder, his or her conviction for the underlying felony can be vacated on grounds of double jeopardy.See Innis, 391 A.2d at 1166 n. 3 (citing People v. Anderson,233 N.W.2d 620, 623-24 (Mich. 1975)). The court need only be uncertain about the basis of the jury verdict. See id. In other words, if a jury convicts a defendant of first degree murder, but does not specify whether that verdict was reached on a theory of felony murder or a theory of premeditated and deliberate murder in the first degree, the conviction for an underlying felony is a violation of the defendant's double jeopardy protections and must be vacated. See id.
In post-conviction relief actions, however, case law distinguishes between jury verdicts and guilty pleas with regard to this issue. The general rule is that a conviction based on a guilty *Page 10 
plea cannot be challenged, as long as the plea was counseled and voluntary. See U.S. v. Broce, 488 U.S. 563, 569 (1989). The United States Supreme Court established an exception to the rule barring a collateral attack on a guilty plea, however, when the charge against the defendant — "judged on its face" — is one that the State may not constitutionally prosecute. Menna v. New York, 423 U.S. 61, 63 (1975) (finding that where the State is precluded from "hailing a defendant into court on a charge" the conviction on that charge must be set aside even if the conviction was entered pursuant to a plea of guilty) (emphasis in original); see also Blackledge v. Perry, 417 U.S. 21
(1974). The rule was reiterated in U.S. v. Broce, which, like the present case, involved the double jeopardy prohibition against multiple punishments. 488 U.S. at 576 (holding that theMenna/Blackledge exception was applicable to, but not proper, in that case).[9]
These earlier decisions of the United States Supreme Court have since been clarified by subsequent case law. The court in U.S. v. Kaiser
explained that an applicant for post-conviction relief who had pleaded guilty may prevail on his double jeopardy claim only if the violation is apparent from the face of the guilty plea record. 893 F.2d 1300, 1303
(11nth Cir. 1990) (holding that the face of the record showed that the court imposed cumulative punishments for a greater and a lesser-included offense in violation of the double jeopardy clause). If a claim requires the court to rely on factual evidence beyond the guilty plea record to make a determination, the petitioner is barred from challenging the conviction. See Kaiser, 893 F.2d at 1303; Taylor v. Whitley,933 F.2d 325, 328 (5th Cir. 1991). If a claim does not require the court to rely on *Page 11 
evidence outside of the guilty plea record, then the double jeopardy issue must be addressed on its merits. Id.
The finality and effect of a guilty plea requires disparate treatment from a jury verdict. As the Supreme Court explained in Broce, "[by] entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." 488 U.S. at 570. The Court went on to say that "a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede[s] that he has committed two separate crimes."Id. For these reasons, a post-conviction relief action based upon a guilty plea is treated dissimilarly to one based upon a jury verdict; the former seems to require a double jeopardy violation that is clear on the face of the plea record to vacate a conviction and sentence, whereas a jury verdict does not.
In Taylor v. Whitley, the defendant and another accomplice pleaded guilty to murder and armed robbery, and the court upheld their convictions for murder and the underlying felony of robbery, even though the State had not indicated whether it intended to prove premeditated and deliberate first degree murder or felony murder at trial.933 F.2d 325, 328 (5th Cir. 1991). In that case, the defendant admitted to having "committed felony murder or specific intent murder, or both" during the plea colloquy. Id. The court allowed both convictions to stand because the face of the murder indictments to which the defendants entered guilty pleas would have permitted the State to prosecute the crime of felony murder as well as the crime of premeditated and deliberate first degree murder. Id. The court went on to explain that while the defendants might have been able to prove a double jeopardy violation in an evidentiary hearing, the *Page 12 
defendants, by entering their guilty pleas, waived their rights to such an evidentiary hearing. Id. at 328-29.[10]
In this case, petitioner Jackson relies on more than just the face of the plea record to argue that his constitutional right to be free from double jeopardy has been violated. While he argues that the record of the plea colloquy is the most compelling indication that the murder conviction against him was rooted in a felony-murder theory, he also includes evidence of a Smithfield Police Department report, a Rhode Island State Police report, a witness statement by Assistant Attorney General James Ryan, instructions to the Providence County Grand Jury, and a transcript of the plea hearing before Judge Grande. Yet, under the rule in Broce, as applied in Taylor, only the plea record can be evaluated to decide the merits of the petitioner's claim; the other evidence cannot be considered.[11]
The record of the plea colloquy in this case suggests that petitioner Jackson may have pleaded guilty to premeditated and deliberate first degree murder or felony murder, much like in Taylor. Interestingly, both the petitioner and the State rely largely on the same passage from the plea colloquy, where the prosecutor outlined the factual basis for the pleas, to support their divergent positions on the double jeopardy claim: *Page 13 
 If this case were to proceed to trial, your Honor, the State is prepared to prove beyond a reasonable doubt that on May 24th of 1989, these two individuals, Mr. Olney and Mr. Jackson, along with a third person, Ralph Manchester, went into the home of Blanche Marcotte at 17 Douglas Circle in the Town of Smithfield, Rhode Island, in the evening hours of that day with the intent to rob property from her and from that house. The outside wires on the house were cut by Mr. Jackson. There was a knock at the door, again by Mr. Jackson. The three of them entered her home at 17 Douglas Circle, they engaged in a struggle with Mrs. Marcotte. Mr. Jackson held Mrs. Marcotte in a headlock. Mr. Olney and Mr. Manchester searched the house for valuables. Mr. Manchester left the house and left with a radio. Mr. Olney and Mr. Jackson stayed inside the house with the deceased, Blanche Marcotte. She was taken into her bedroom. There she was murdered. She was stabbed eighteen times, and each of these defendants before the Court participated in the act of murder. When they left, additional property was taken on that date and on subsequent dates. There was money taken, jewelry taken, an iron was taken and a starter's pistol was taken. . . .
(Tr. of Plea at 19-21).
A fair reading of this passage can suggest that petitioner Jackson pleaded guilty to premeditated and deliberate first degree murder. The description of the murder itself, which involved repeated stabbings and a lapse of time between when the first robbery occurred and when the stabbings took place, indicates that the State had evidence to support the elements of robbery and premeditated and deliberate first degree murder as two separate crimes. In addition, as the State correctly asserts, the phrase "each of these defendants before the courtparticipated in the act of murder" suggests that the act to which petitioner Jackson pleaded guilty was more than a killing during the perpetration of or attempted perpetration of a robbery. Id. at 20. Moreover, the court made sure during the course of the plea colloquy that defense counsel had explained to the defendant "the elements of the crime of murder and of the crime of robbery *Page 14 
which the State would have to prove beyond a reasonable doubt."[12] In addition, Justice Grande stated, in the court's closing remarks, that "the facts that have been stated in the record, if proved, certainly do support a conviction of both counts." Id. at 13. Significantly, she also said that, from the record, she distilled advanced planning and "greed and hate and revenge" as motivation for the crimes, a further indication of premeditation and deliberation.
Yet this reading of the plea record does not eliminate the fact that it also can be interpreted to support a felony murder theory. The prosecutor begins his recitation of the facts, for example, by stating that the defendants entered the victim's home "with the intent to rob."Id. at 19. This factual recitation further states that property was taken from the victim immediately before and after the killing and that the defendants returned to her house on subsequent dates to take more property. It thereby suggests that the defendants did indeed murder her during the perpetration of a robbery. Id. at 19. The court's remarks at the end of the plea colloquy also may suggest a felony murder theory, as the court makes reference to the fact that the victim had to be killed because she recognized the robbers. Id. at 29.
As such, the plea record can be read to suggest that petitioner Jackson pleaded guilty to premeditated and deliberate murder, but also it can be read fairly to indicate a plea to felony murder. This Court thus finds itself in a similar position to the court inTaylor. Like the prosecution in Taylor, which did not indicate which theory of murder it intended to prove at trial, the State, in this case, did not indicate whether it would pursue a felony murder or a premeditated and deliberate murder theory. 933 F.2d at 328. While the record in Taylor alleged that the defendant had "committed felony murder or specific intent murder or both," and the record in the *Page 15 
present case simply uses the term "murder," in both cases the basis for the murder conviction can be interpreted both ways. Id. The court explained in Taylor that by a guilty plea, the defendant waived his right to an evidentiary hearing as to the double jeopardy violation.Id. Similarly, by pleading guilty in this case, petitioner Jackson has waived his right to an evidentiary hearing whereby he could attempt to prove that his plea to murder was in fact a plea only to felony murder. Because the face of the plea record was perhaps left intentionally vague as to the nature of his first degree murder conviction, and petitioner Jackson has waived his right to an evidentiary hearing by entering into the plea, he cannot prove the double jeopardy violation on which his action for post-conviction relief is grounded and his consecutive life sentences for murder and robbery must stand.
This result is fair in light of the bargain that petitioner Jackson struck with the State almost two decades ago. It must be remembered that the give and take of plea bargaining "flows from the mutuality of advantage" to both defendants and prosecutors. Bordenkircher v.Hayes, 434 U.S. 357, 363 (1977) (citing Brady, 397 U.S at 752). The process of plea bargaining is advantageous to the prosecutor, by avoiding pre-trial proceedings, protracted trial and reducing the State's case load; it is also beneficial to the defendant by potentially inducing a recommendation of a lenient sentence. Frank v.Blackburn, 646 F.2d 873, 878 (5th Cir. 1980) (citingBordenkircher, 434 U.S. at 636). Plea bargaining provides for judicial efficiency by allocating judicial resources where they are most needed.See Santobello v. New York, 404 U.S. 257, 260 (1971) (finding that plea bargaining, if properly administered, should be encouraged because if every "criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities"). Additionally, when a defendant's sentence is the result of a plea bargaining agreement, a *Page 16 
sentencing justice must have "wide latitude to accept a negotiated plea agreement." McKinney v. State, 843 A.2d 463, 472 (R.I. 2004) (holding that unless the sentence was illegal or unconstitutional, then the sentence should not be altered, so as to hold the State and the defendant to their respective plea agreements).
By pleading guilty to both the murder and robbery charges after being sufficiently advised by competent counsel, petitioner Jackson himself benefited from the plea bargaining process. Both he and his co-defendant Olney each gained an advantage from their vague pleas: neither of the defendants had to admit to being — or go to trial to defend against being — the killer of Blanche Marcotte. Both were relieved of possible life sentences without parole for murder. The State, too, benefited from the plea, giving up its preferred sentences in exchange for not having to prove different degrees and/or theories of murder as to each defendant. It avoided the risks and vagaries of trial. A decision by this Court to vacate petitioner Jackson's consecutive life sentence for robbery thus would not only be contrary to Rhode Island and federal law, but it would impermissibly alter the final bargain that these parties struck voluntarily and intelligently, almost 20 years ago, to the benefit of one and the detriment of the other.[13]
 Conclusion
In light of the finality and effect of a guilty plea, this Court cannot conclude from the face of the plea record that the life sentence for robbery that petitioner Jackson received consecutive to a life sentence for murder is a violation of the double jeopardy clauses of the Rhode Island and United States Constitutions. Accordingly, the petitioner's application for post-conviction relief is denied.
[1] The original indictment filed against petitioner Jackson charged him with murder but did not particularize that charge as one of first degree murder, second degree murder or felony murder. The indictment merely charged that the defendant "did murder" and "did rob" Blanche Marcotte. The State is not required to particularize a murder charge; the murder statute states "the degree of murder may be charged in the indictment or information." R.I. Gen. Laws 1956 § 11-23-1 (emphasis added). Petitioner Jackson's counsel did not file a request for a bill of particulars to seek clarification of the murder charge. The State's filing of notice to seek a penalty of life without parole, however, indicates that it would be seeking to convict the petitioner of first degree murder. Under R.I. Gen. Laws § 11-23-1, every murder that is either "willful, deliberate, malicious, and premeditated" or that is "committed in the perpetration of or attempt to perpetrate . . . robbery" is "murder in the first degree."
[2] Under Rhode Island law, murder is an unlawful killing of a human being with malice aforethought. First degree murder is either a premeditated killing or a killing committed in the perpetration, or attempted perpetration, of a felony. See R.I. Gen. Laws 11-23-1.
[3] See U.S. Const. amend. V ("nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb"); R.I. Const. Art. I § 7 ("no person shall be subject for the same offense to be twice put in jeopardy"). The prohibition against double jeopardy is the protection against more than one prosecution, conviction, or punishment for the same offense. Brown v. Ohio, 432 U.S. 161, 162 (1977) (citingNorth Carolina v. Pearce, 395 U.S. 711, 717 (1969)).
[4] The petitioner's co-defendant, Leroy Olney, also brought an action, pro se, for post-conviction relief on December 10, 2003. He claimed ineffective assistance of counsel, an unlawfully induced guilty plea. Abuse of discretion by the court, abuse of discretion by the prosecutor, inordinate delay in state court, an unfair Shatney hearing, and an unconstitutional failure to truthfully disclose evidence favorable to the accused. His application for post-conviction relief did not allege a double jeopardy violation. The Superior Court denied all of petitioner Olney's claims for post conviction relief on July 7, 2005. He filed a notice of appeal from the decision to the Rhode Island Supreme Court on July 21, 2005. Leroy Olney v. State of Rhode Island, C. A. No. 03-6456 (R.I.Super.Ct. July 21, 2005). A review of the court file, however, indicates that he never perfected his appeal.
[5] On remand, the Superior Court denied the petitioner's application for post-conviction relief on grounds of laches and entered judgment for the State of Rhode Island.
[6] Indeed, it is difficult to see how the State has been prejudiced by any delay in the filing of petitioner's application for post-conviction relief as his arguments rest on the transcript of the plea, additional materials in the court file and the law, and the State relies only on the plea transcript and the law. In addition, most of the law on which these parties rely existed as of the time of the pleas at issue. As the State does not appear to quarrel with the remedy petitioner Jackson seeks, but only his legal entitlement to that remedy, it is difficult to see how the State has been harmed by petitioner's delay in raising his legal arguments.
[7] See U.S. Const. amend. V; R.I. Const. Art. I § 7.
[8] The felony murder theory, in this jurisdiction, is that "any homicide committed while perpetrating or attempting to perpetrate any of the enumerated felonies is first-degree murder." See State v.Oliveira, 882 A.2d 1097, 1111 (R.I. 2005) (quoting State v.Villani, 491 A.2d 976, 980 (R.I. 1985) and State v. Washington,581 A.2d 1031 (R.I. 1990)). Such a homicide acquires first-degree murder status without the necessity of proving elements such as premeditation and deliberation. State v. Villani, 491 A.2d at 980. Notably, felony murder is criminalized to "discourage negligent or accidental killings by individuals committing one of the underlying felonies." Cook v. State ofWyoming, 841 P.2d 1345, 1351 (Wy. 1992).
[9] It should be noted that both Menna and Blackledge involved the government's attempt to bring a second prosecution against a defendant who already had been convicted of the same offense. The specific language used in these cases refers to that prong of double jeopardy protection. The present case, in contrast, involves double jeopardy protection from multiple punishments for the same offense. According to the court in U.S. v. Kaiser, the "principle involved in Menna andBlackledge would seem to be equally applicable to this [other] prong of double jeopardy protection." 893 F.2d 1300, 1302, n. 2. See,e.g., Broce, 488 U.S. 563 (applying the Menna/Blackledge exception to a double jeopardy claim against multiple punishments).
[10] The State seems to use the decision in Richard v.Commonwealth to argue that when it is unclear which theory of murder was relied upon for the guilty pleas, a consecutive sentence cannot be vacated. 415 N.E.2d 201 (Mass. 1981). It is true that Richard recognized a distinction between jury verdicts and guilty pleas, but it was decided before Broce. The court used all of the evidence available to it to determine that separate convictions were supported by the evidence.Id. at 206. The court did not simply refuse to vacate the second sentence in the face of ambiguity. The Supreme Judicial Court of Massachusetts later distinguished Richard, where the record contained the full trial transcript, from a case where the only transcript available was of the petitioner's probable cause hearing. Porter v.Superintendent, Massachusetts Correctional Institution,417 N.E. 2d 1199, 1201 (1981). While in Richard, there was ample evidence of malice aforethought, 415 N.E.2d at 307, in Porter, the court had no way of determining whether malice existed due to the inadequacy of the record.Porter, 417 N.E. 2d at 1202. As the murder plea could be interpreted both ways, the consecutive sentences were affirmed. Id. at 1203.
[11] The United States Court of Appeals for the Tenth Circuit had held that the defendant was entitled to draw upon factual evidence outside the original record to support his claim. United States v. Broce,753 F.2d 811, 819 (10th Cir. 1985). The United States Supreme Court reversed, noting that because the respondent pleaded guilty to indictments that on their face described separate conspiracies, his opportunity to rely on material outside of the record was foreclosed by the "admissions inherent in [his] guilty pleas." Broce,488 U.S. at 576.
[12] Tr. of Plea at 12. Of course, the elements of the crime of murder, as the term was used in the plea colloquy, could in fact be the elements of the crime of felony murder — the elements of the underlying felony plus a killing; however, the court appears to have addressed the crimes as separate.
[13] Query whether vacating petitioner Jackson's life sentence for robbery, as opposed to vacating his plea in its entirety, and allowing the case to go to trial, would be an appropriate remedy even were he to prevail on his double jeopardy argument. Obviously vacating his plea entirely could raise an issue of laches not presently before this Court.